HOLLAND BANKING COMPANY, in Course of Liquidation by S. L. CANTLEY, Commissioner of Finance, v. CONTINENTAL NATIONAL BANK, Appellant.—22 S. W. (2d) 821.

Court en Banc, October 31, 1929.

4

*Omar E. Robinson, Geo. F. Longan* and *Henry L. Jost* for appellant; *Edw. J. White* and *Geo. L. Edwards*, of counsel.

*Roscoe C. Patterson, Orin Patterson* and *Farrington & Curtis* for respondent.

FRANK, J.—This is a suit in conversion. It was begun in the Circuit Court of Greene County on August 19, 1926, by C. E. French, then Commissioner of Finance in charge of the business and property of the Holland Banking Company, which we will call the Holland Bank, against the Continental National Bank of Kansas City, which we will call the National Bank, and E. L. Sanford. Later the action was dismissed as to defendant Sanford. and by agreement S. L. Cantley, who succeeded C. E. French as Commissioner of Finance, was substituted for said French as party plaintiff.

8

The petition is in two counts. The first count charges that defendant on September 9, 1922, converted $25,000 belonging to the Holland Bank.

The second count of the petition charges that defendant converted the sum of $75,212.55, belonging to the Holland Bank and prayed judgment for said sum with interest. The cause went on change of venue to the Circuit Court of Pettis County, where it was tried to the court, a jury being waived, resulting in a judgment for defendant on the first count of the petition, and for plaintiff and against defendant on the second count in the sum of $97,274.85, being the full amount asked for in said count with interest. Defendant appealed from the judgment on the second count. No appeal was taken from the judgment on the first count.

Prior to and during the times in question, appellant National Bank was a banking corporation transacting a banking business in Kansas City, Missouri, and the Holland Bank was a banking corporation organized under the laws of Missouri and engaged in the banking business in Springfield, Missouri. The National Bank continued to transact a banking business as such until October 17, 1922, on which date it was succeeded by the Continental National Bank & Trust Company. The Holland Bank ceased to function as a bank, and was placed in charge of the Commissioner of Finance on January 15, 1924.

The facts, stated in a light favorable to respondent, tend to show that shortly prior to the time of the happening of the events giving rise to this lawsuit, E. L. Sanford owned a majority of the capital stock of the Holland Bank. On April 9, 1921, J. L. Hine and C. E. Randall, then vice-president and cashier, respectively, of said Holland Bank, desiring to purchase E. L. Sanford's stock in said bank, applied as individuals to the National Bank of Kansas City for a loan of $100,000, with which, together with funds raised from other sources, they expected to pay Sanford for said stock. The National Bank made the loan to them and accepted their individual note for $100,000, secured by six hundred and seventy-five shares of stock in the Holland Bank, and, at their direction, deposited the proceeds of said loan in said National Bank to the credit of the Holland Bank. After the National Bank credited the Holland Bank with $100,000. a corresponding entry was made on the books of the Holland Bank, charging the National Bank with $100,000. This $100,000 was paid to Sanford by giving him a deposit credit of $53,000 in the Holland Bank and delivering up to him $47,000 in notes which he owed the Holland Bank.

In February, 1922, Sanford repurchased from Hine and Randall the stock of the Holland Bank which he had theretofore sold them

and again assumed charge and control of the bank. As part payment of the repurchase of said stock, Sanford assumed and agreed to pay the $100,000 individual note of Hine and Randall to the National Bank. The National Bank agreed to this change, and Sanford executed his note to said National Bank for $100,000 secured by eight hundred shares of Holland Bank stock, and it was substituted for the Hine and Randall note and accepted by the National Bank under the same agreement it had theretofore accepted the Hine and Randall note. After this substitution was made, Hine and Randall's note was cancelled and returned to them. On September 8, 1922, Sanford paid $25,000 on his said note, leaving $75,000 due thereon. On October 17, 1922, the National Bank ceased business, and on that date applied the sum of $75,212.50 of the credit standing on its books in favor of the Holland Bank, to the discharge of Sanford's individual note, principal and interest, and returned the note and stock collateral thereto to Sanford, the maker of the note.

Appellant concedes that the loan was made to Hine and Randall individually and the proceeds thereof deposited to the credit of the Holland Bank at their direction, but contends that it was done for the benefit of the bank, under an express agreement with Hine and Randall that the deposit would not be subject to check during the life of the loan, and if, at any time, the National Bank became dissatisfied with the security, it could, if it so desired, apply the deposit so made in favor of the Holland Bank to the payment of the Hine and Randall note.

The negotiations looking to the making of the loan were had with one Meade, president of the National Bank. He testified in substance that in the negotiations with Hine and Randall which resulted in the making of the loan, they did not tell him that they intended to buy Sanford's stock or that they wanted to make the loan for that purpose, but on the contrary told him that since the merger of the Bank of Commerce with the Holland Bank, they were experiencing a slump in deposits; that in anticipation of a statement called, they were anxious to have the first published statement of the consolidated banks make a strong showing; they wanted the reserve up and did not want to show a material decrease in deposits, and for that purpose wanted to make arrangements for credit of $100,000 and give their individual notes in place of the bank's obligation; that the purpose of the credit was to be a reserve balance, only to be used as a reserve balance. It was to be credited to the Holland Bank, not subject to check, and a letter was to be furnished authorizing the National Bank to liquidate the credit at any time it desired; that the loan was made on these terms.

The testimony of Meade, standing alone, would support the contention of appellant, and would, if it had impressed the trial court, have been sufficient to sustain a finding for defendant, but there is other testimony in the record which must be considered in determining whether or not the trial court's finding is supported by substantia' evidence.

Hine and Randall testified that the money was not borrowed for the Holland Bank, or for the purpose merely of making a showing of credit in favor of the Holland Bank on the books of the National Bank; that they borrowed the money for the purpose of buying Sanford's stock in the Holland Bank and so told Meade at the time they were arranging for the loan; that the matter was talked over with Meade in the conference at Kansas City, and it was there understood what the money was being borrowed for; that they told the National Bank people that they were borrowing the money for the purpose of buying Sanford's stock in control of the Holland Bank; that it was understood that if the loan was made, the Holland Bank's deposit with the National Bank was to equal the loan made to Hine and Randall; that they would have control of the Holland Bank after they purchased Sanford's stock; that they agreed that the Holland Bank would carry a deposit equal to or greater than the amount of their loan of $100,000, not subject to check, and the National Bank might charge their note against said deposit at any time it saw fit to do so; that they borrowed $100,000 from a bank in St. Louis and paid Sanford for his stock with the money borrowed from these two banks and with other funds; that this money was used by Sanford in paying all the obligations he owed except a small balance that went to his credit in the bank; that at the time they borrowed the $100,000 from the National Bank, they told Meade how they wanted the transaction handled and it was then agreed what was to be done with the $100,000.

Appellant contends that there is no evidence tending to show that the National Bank knew that Hine and Randall intended to pay Sanford $100,000 by taking assets to that amount out of the Holland Bank and delivering them to him, on the theory that the $100,000 on deposit in the National Bank to the credit of the Holland Bank would cover the assets so removed.

We do not agree with this contention. Hine testified that he and Randall outlined the deal to Meade in detail and told him of their desire to borrow $100,000 from his bank, and that they hoped to do the same thing in St. Louis; that they told him there would not be any cash go out of the bank, any to amount to anything. "There was about $50,000, the rest would be added to our reserve; it would be additional reserve for us." Hine further testified that he was quite sure that they listed each and every piece of paper that was coming out

of the bank; that he was not positive, but he knew that they told Meade the exact story of the whole complete transaction.

The legitimate inference to be drawn from this testimony is that Hine and Randall were requiring Sanford to take up all the notes he owed the Holland Bank, out of the money they were paying him for the stock and after doing so there would be about $50,000 in cash going to Sanford, and they so told Meade at the time they borrowed the money. If, as Hine testifies, they told Meade the exact complete story of the whole transaction, listed each and every piece of paper that was coming out of the bank, and that only about $50,000 cash was going out of the bank, he could not help but know that Hine and Randall were intending to take Sanford's notes out of the Holland Bank, deliver them to him to pay for his stock, expecting the $100,000 they had placed on deposit in the National Bank, together with money which they had placed in other banks to the credit of the Holland Bank, to cover the amount of the notes so removed. At least the evidence justifies such a finding.

Appellant, however, contends that Randall testified that he did not tell Meade that if a credit was set up in favor of the Holland Bank he intended to take up assets to that amount and turn such assets to Sanford in payment for his stock. We do not so interpret the evidence of this witness.

It is true that under the shrewd and persistent cross-examination of counsel, Randall made an answer, which, if standing alone, might be susceptible of such a construction.

The question and answer relied on are:

"Q. That isn't what I asked. I asked whether you told these banks or either of them, that if either of them set up this credit in favor of the Holland Bank, you intended to take up the assets to that amount of credit and turn these assets over to Sanford in the purchase and acquisition of his stock. Did you tell either of those banks that? A. I did not."

Just prior to the foregoing question and answer, the witness was asked whether or not he made such a statement to one Brown, at the time they were negotiating for a $100,000 loan from a St. Louis bank. The witness started to answer by telling what he said to Brown, but was stopped by counsel and instructed to answer the question yes or no. He answered, "No, I never made any such statement of course." He was then asked if he ever stated to anyone that it was his purpose to take the equivalent of these loans out of the assets of the Holland Bank, and turn them over to Sanford, and was again instructed to answer yes or no. His reply was, "They cannot be answered yes or no."

The court then admonished the witness to answer the question yes or no, if he could, and then explain.

The witness then answered:

"A. To answer that question yes or no, indicates we were going to take out assets. As a matter of fact, we created a credit for the bank at each of these two places, which enabled us to make corresponding entries on the books of the Holland Bank. That is known to those banks and known to any bank that loans money to individual."

The last answer, when considered with the evidence of the witness in chief, makes it clear that he thought the import of counsel's questions was that he expected to wrongfully abstract assets from the Holland Bank, that is, take such assets without first providing a credit on the books of the Holland Bank sufficient to cover the assets taken out.

Other evidence tends to show that both parties regarded the loan made first to Hine and Randall and later to Sanford, as an individual loan for the benefit of the parties making it and regarded the $100,000 deposit in the National Bank as belonging to the Holland Bank. Hine and Randall and later Sanford paid the interest on the note from their individual funds. The National Bank paid the interest on the $100,000 deposit to the Holland Bank. The National Bank pressed Sanford for payment of the note and accepted a $25,000 payment from him, and requested and received from him a personal financial statement to keep with the note. At the time Sanford made the $25,000 payment on the note, he referred to the note as "my note."

If, as appellant's evidence tends to show, the $100,000 deposit credit standing on the books of the National Bank to the credit of the Holland Bank, was set up for the sole purpose of showing a good reserve for the Holland Bank, under an agreement that such deposit was not subject to check, and the National Bank was authorized to charge off said deposit for the purpose of paying Sanford's individual note any time it so desired, the contract under which the credit was set up would, under such circumstances, be one made for the benefit of the Holland Bank, and it would be bound by the stipulation authorizing the National Bank to charge off the deposit in payment of the note, under the familiar doctrine that where a contract is made for the benefit of a third party, such party may not accept the benefits of the contract without also assuming its burdens, but the trouble with this theory of the case is, that the trial court, sitting as a jury, did not believe appellant's evidence and found the issues for respondent. In this situation, our task is to determine whether or not the trial court's finding in favor of respondent is supported by substantial evidence.

Both parties concede that the $100,000 loan was made on the individual note of Hine and Randall and the proceeds thereof deposited in the National Bank to the credit of the Holland Bank. Hine and Randall testified that they told Meade they were purchasing a controlling interest in the Holland Bank from Sanford and wanted to borrow $100,000 to pay Sanford on the purchase price of said stock and expected to close the deal with him by depositing the $100,000 in the National Bank to the credit of the Holland Bank, then pay Sanford a like amount out of the assets of the Holland Bank by delivering to him notes which he owed the Holland Bank. The reasonable inference to be drawn from this evidence is that the $100,000 deposit was not pledged to secure the payment of Hine and Randall's note. If Hine and Randall's testimony be believed Meade knew why they were borrowing the money and knew they expected to pay it to Sanford. How could they pay the money to Sanford, if it was to remain on deposit in the National Bank, not subject to check or withdrawal for any purpose and pledged to secure the payment of their $100,000 individual note? Mere knowledge, without more, on the part of a lender as to what use the borrower expects to make of the money borrowed, does not affect the contract under which the loan is made, but under the peculiar circumstances of this case, Meade's knowledge that Hine and Randall were borrowing this money for the purpose of buying Sanford's stock in the Holland Bank, is evidence tending to show, and from which the trier of fact was authorized to find, that it was not tied up by a pledge so it could not be used for the purpose for which it was borrowed.

Hine and Randall did agree with Meade that if he would loan them the $100,000, they would, after they acquired control of the Holland Bank, keep a Holland Bank deposit of at least $100,000 during the life of their loan.

Concerning this question Randall testified:

"Q. Was there any understanding between you and the Continental National Bank people when you borrowed the $100,000 as to retaining or keeping a deposit of the Holland Banking Company with the Continental National Bank? A. Yes.

"Q. Who was to keep that much money with the Continental? A. The Holland Banking Company's deposit with the Continental Bank was to equal the loan made to Hine and Randall."

Hine testified:

"Q. What did you agree to do if the money was loaned to you at the time? A. We agreed to carry the same amount on deposit by the Holland Banking Company of our loan of $100,000."

The clear import of this evidence is that the $100,000 which was to remain on deposit in the National Bank as a reserve account not subject to check, during the life of the loan, and subject to be charged off in payment of the loan, was not the $100,000 which Hine and Randall borrowed, but was a $100,000 Holland Bank account which Hine and Randall agreed to keep with the National Bank after they acquired control of the Holland Bank. This conclusion is strengthened by the fact that if Hine and Randall had not used the $100,000 which they borrowed to purchase Sanford's stock they would not have acquired control of the Holland Bank, and would not have been in a position to keep a Holland Bank deposit in the National Bank during the life of their loan.

There was an agreement that the $100,000 reserve account which the Holland Bank was to keep with the National Bank during the life of the loan should not be subject to check, and the National Bank was authorized to charge the $100,000 note against this reserve account any time it so desired. Randall testified:

"Q. Was anything said in that conversation with regard to your keeping in the Continental, during the life of these notes, $100,000 reserve account? A. Yes, that was part of the consideration of getting the money.

"Q. Leave it there? A. Yes.

"Q. And not check against it? A. Yes.

"Q. And the bank there charge it against your bank when they so desired? A. Yes.

"Q. That is to the account of your bank? A. That is right."

It is true that the Holland Bank was not a party to the contract under which Hine and Randall borrowed the money and deposited it to the credit of the Holland Bank, and title to the deposit did not pass to the Holland Bank until it parted with a consideration for it, by delivering to Sanford a like amount of its assets. It is also true that the agreement that the Holland Bank deposit should stand pledged to secure the payment of Hine and Randall's note, was made before the title to the deposit passed to the Holland Bank, but the crucial question is, what was the agreement—not when was it made. Our conclusion is that the evidence warranted a finding that the fund which Hine and Randall agreed to pledge as security for the payment of their note was a Holland Bank reserve account of at least $100,000 which they agreed should be kept with the National Bank after they acquired control of the Holland Bank, and not the $100,000 which they borrowed for the purpose of acquiring a controlling interest in the Holland Bank. This conclusion is supported by the further fact that before the loan was finally consummated, Meade demanded and received the following letter from

Randall, as cashier of the Holland Bank, written on the letterhead of the bank:

"Confirming our conversation, we hereby authorize you to charge our account for note for $100,000 signed by me and Mr. Hine, secured by 674 shares of Holland Banking Company stock, any time such note is unsatisfactory to you."

The fact that Meade required a letter from the bank authorizing him to charge Hine and Randall's note against the bank's account is a circumstance justifying an inference that he understood the agreement to be that the bank's funds were pledged to secure the note. The $100,000 deposit was made from Hine and Randall's own personal funds, and at that time, they could have lawfully pledged the deposit credit to secure the payment of their note. If they had done so, the Holland Bank could not thereafter accept the deposit without taking it subject to the pledge. If Meade had understood the agreement to be that Hine and Randall were to pledge their personal funds to secure their note, it may be reasonably inferred that he would have required written evidence of such pledge from them instead of requiring a letter from the bank pledging the bank's funds. The fact that he did not do so is a circumstance tending to show that it was agreed that the bank's and not Hine and Randall's personal funds should be pledged to secure their note. Funds belonging to the Holland Bank could not be lawfully appropriated to the payment of Hine and Randall's personal note and any agreement that such funds might be so used was void. Under the facts shown, the only theory on which it could be properly held that the deposit in question was pledged to secure the payment of Hine and Randall's note, is that when Hine and Randall made the deposit from their own personal funds, they had a lawful right to and did make such deposit subject to a pledge or lien to secure the payment of their personal note, and the Holland Bank thereafter accepted the deposit subject to such pledge. We cannot accept this theory because there was substantial evidence that Hine and Randall did not make the deposit subject to such a pledge, and the trial court so found. This being an action at law, the finding of the trial court, sitting as a jury, is conclusive on us.

Appellant's chief contention is that the Holland Bank cannot accept and enjoy the benefits of the $100,000 credit which the contract gave it, without being bound by the other provision of the same contract which authorized the National Bank to charge off the credit for the purpose of paying Sanford's individual note.

Many cases are cited in support of this contention which hold that where a contract is made for the benefit of a third party, such third party cannot "grasp the benefits of that con-

16

tract with one eager hand, while thrusting aside its burdens with the other." We recognize this well-established principle of law, but it has no application to the facts of this case. We have already pointed out that Hine and Randall did not deposit the $100,000 to the credit of the Holland Bank subject to a lien to secure the payment of their personal note, and after title to the deposit credit passed to the Holland Bank, it could not be so pledged.

Contention is made that although the Holland Bank knew at the time, that Sanford's individual note in the sum of $75,212.55 had been charged against its account in the National Bank, it never thereafter made any objection to such action, and for that reason it must be held to have approved and consented thereto. From this it is argued that the Commissioner of Finance now in charge of the bank is estopped to claim the contrary.

We agree that the Commissioner's rights in the matter must be measured by the rights the Holland Bank would have if it were here making the same contention the Commissioner is making.

In determining this contention we must proceed on the theory that the deposit on the books of the National Bank in favor of the Holland Bank, was a bona-fide credit belonging to the Holland Bank, because the trial court so found on substantial testimony. If this money belonged to the Holland Bank, its board of directors by resolution duly and legally passed could not have appropriated it to the payment of Sanford's individual note, without any consideration moving to the bank, or authorized anyone else to do so. The effect of such an act would be to make a gift of the bank's property without consideration.

In Brinkerhoff Zinc Co. v. Boyd, 192 Mo. 597, 612, this court dealt with the right of the directors of a corporation to transfer the corporate property without consideration. In disposing of that question we said:

"If they transferred the corporation's equity of redemption in those bonds for that consideration, they transferred it for no consideration, and the transfer was in violation of their duties as trustees and beyond their authority as directors."

At page 613 of the same case, we said:

"But even if this act had been done at a regular meeting of the board it would have been invalid, because it was in effect giving away the whole estate of the corporation without any lawful consideration."

If in the case at bar, the board of directors of the Holland Bank could not have lawfully appropriated the bank's money to the payment of Sanford's individual debt, without any consideration whatever moving to the bank, it necessarily follows that they could not

ratify the wrongful act of the National Bank in converting their bank's money for the same purpose.

A kindred question was before the St. Louis Court of Appeals in I. X. L. Pressed Brick Company v. Schoeneich, 65 Mo. App. 283, 288, whereat the court said:

"Conceding that the entire board knew of the misappropriation, the contention involves the proposition that the board of directors of a corporation may condone or ratify the wrongful conversion of money by one of its officers, or that such officer with the consent or connivance of the board may disregard a by-law of the corporation. It is settled that neither can be done short of the unanimous consent of the shareholders. [1 Morawetz on Private Corporations, sec. 499; Hazard v. Durant, 11 R. I. 196.]" The rule is stated in 14A Corpus Juris, 101, as follows:

"The corporation cannot condone the fraud of a director or officer, by which the assets of the corporation have been misappropriated, except by unanimous consent of the stockholders; otherwise a majority, or a director who might control a majority vote in the corporation, might rob and despoil it with impunity."

If the officers and directors of the Holland Bank could not lawfully authorize, condone or ratify misappropriation or conversion of the bank's assets without the consent of all the stockholders, it must follow that mere silence of the officers and directors, with knowledge that the bank's assets have been converted and applied to the payment of Sanford's individual note, would not amount to a ratification of such act. In other words, the officers and directors of a bank are its managing officers, and have charge and control of its affairs and property. It is, however, their duty to manage the affairs of the bank with due regard for the interest of the stockholders whom they represent. Within the limits of their duty and lawful authority they may manage the affairs of the bank as their judgment dictates, but they cannot give away the bank's assets or ratify or condone the act of another in converting them, because the assets are not theirs to give. They belong to the stockholders. From what is said above it necessarily follows, (1) that the agreement of Hine and Randall to the effect that the National Bank might use the funds of the Holland Bank to pay their individual note, was absolutely void and not subject to ratification, except by consent of all the stockholders of the bank, and (2) if the officers and directors could not ratify such acts by official action, their mere silence and inaction after the acts are committed would not amount to a ratification or estop the Commissioner from asserting his right to the funds wrongfully converted.

Contention is made that to deny appellant the benefit of the agreement that it might charge Sanford's note against the Holland Bank's deposit, would in effect be compelling it to lend its credit to the Holland Bank without consideration and in violation of law. Appellant did not lend its credit to the Holland Bank or for its benefit. The money was loaned to Hine and Randall for their individual use in the purchase of Sanford's stock. It is obvious without discussion that the individual note of Hine and Randall executed to appellant, for money actually loaned by it to them, is supported by a valid consideration. The fact that Hine and Randall agreed at the time the loan was made, that appellant might charge their note against the Holland Bank's account, does not change the situation. Such agreement did not bind the bank. Appellant knew that and had no right to rely upon it.

It is next contended that under plaintiff's petition, and otherwise, evidence as to transactions between Hine and Randall and Sanford, concerning the purchase of Sanford's stock in the Holland Bank, and of transactions between these parties and the Holland Bank pertaining to said stock transactions, was improperly admitted over defendant's objections. The petition alleges a state of fact, which, if true, would show that the money on deposit in the National Bank to the credit of the Holland Bank, was the property of said Holland Bank, and that appellant was guilty of conversion when it applied money belonging to said bank to the payment of Sanford's individual note. No assault is made on the petition and for that reason, it is not necessary to reproduce its allegations.

Appellant contends that the $100,000 credit set up on its books was a mere paper credit for the purpose of making a good showing for the Holland Bank, while respondent contends that such credit was bona-fide and the property of the Holland Bank. The burden was on respondent to show that such credit represented actual money belonging to the Holland Bank. Evidence that Hine and Randall had bought Sanford's stock, borrowed $100,000 from the National Bank on their individual note, deposited the proceeds of said loan in the National Bank to the credit of the Holland Bank, expected to pay Sanford by delivering him assets (his notes) of the Holland Bank, and that appellant knew such facts at the time the loan was made, all tends to prove that the deposit credit in the National Bank was the property of the Holland Bank, and was not pledged to secure the payment of Hine and Randall's note to the National Bank. For the reasons stated the evidence in question was admissible as tending to prove the Holland Bank's title to the $100,000 deposit credit in the National Bank, a

fact which plaintiff was required to prove. The petition pled the ultimate facts. It was not necessary to plead the evidence tending to prove such facts.

It is next contended that appellant could not become guarantor or surety for Hine and Randall and Sanford in respect to the management of their own bank, and performance of their duties and discharge of their obligations to said Holland Bank. A sufficient answer to this contention is that no such thing was attempted in this case. It sufficiently appears from what we have heretofore said, that all appellant did was to make Hine and Randall an individual loan on their personal note secured by stock in the Holland Bank, a business deal which it had a lawful right to make. Appellant was a lender and not a guarantor.

Summed up our final conclusion is that any agreement made by Hine and Randall or by the Holland Bank that funds belonging to the bank should stand pledged to secure the payment of Hine and Randall's personal note would be void. It must therefore follow that the $100,000 which Hine and Randall deposited from their personal funds, to the credit of the Holland Bank, was not pledged to secure the payment of their note unless they so pledged it before title thereto passed to the Holland Bank. There was substantial evidence that it was not so pledged, and the trial court so found. We are concluded by this finding.

For the reasons stated the judgment of the trial court should be and is affirmed. *Blair, Atwood* and *Gantt, JJ.,* concur; *Ragland, J.,* dissents in a separate opinion in which *White, C. J.,* and *Walker, J.,* concur.

RAGLAND J. (dissenting):—Being unable to concur in the majority opinion and finding the statement of facts therein inadequate from my point of view, I shall set forth what I deem to be the controlling facts—all of them, and then what seem to me to be the necessary conclusions of law with reference to such facts.

### THE FACTS.

This is an action at law to recover damages for an alleged conversion of personal property. The petition is in two counts: the first charges a conversion of $25,000 and the second that of $75,212.55. The plaintiff is the State Commissioner of Finance, in charge of the Holland Banking Company (hereinafter called the Holland Bank) at Springfield, Missouri, now in course of liquidation, and the defendant is the Continental National Bank (hereinafter referred to as the National Bank), located at Kansas City. One Ed L. Sanford was made a party defendant in the petition as originally filed, but the cause was dismissed as to him preceding the trial in the circuit

court. The cause was tried to the court sitting as a jury; there was a judgment for defendant on the first count, and for the plaintiff on the second count for the full amount of the recovery therein prayed. From the judgment so rendered against it defendant prosecutes this appeal. As plaintiff abides the judgment against him, the proceedings relating to the first count of the petition are not here for review. The second count, omitting formal matters, is as follows:

"Plaintiff further states that from March 10, 1922, to January 15, 1924, the defendant Ed L. Sanford was the president of the Holland Banking Company and in active control of its business and affairs.

"Plaintiff further states that in the month of May, 1922, the defendant Ed L. Sanford was personally indebted to his co-defendant, the Continental National Bank, in the sum of $100,000, evidenced by his promissory note; that at said time the Holland Banking Company had $100,000 on deposit with the Continental National Bank for which it took credit on the books of the Holland Banking Company and received credit on the books of the said Continental National Bank; that at said time, without the knowledge and without the authority of the board of directors of the Holland Banking Company, and without any consideration moving to the Holland Banking Company, there was an understanding and agreement between the defendant Ed L. Sanford and his co-defendant the Continental National Bank that the said deposit of the Holland Banking Company with the Continental National Bank would be maintained equal to the indebtedness of Ed L. Sanford and could be applied in payment of Ed L. Sanford's said personal indebtedness. . . .

"Plaintiff further states that in consummation of said wrongful agreement and plan, the said Continental National Bank and Ed L. Sanford did on or about the 17th day of October, 1922, take and convert $75,212.55 which belonged to the Holland Banking Company and applied the same upon the indebtedness of said Ed L. Sanford to the Continental National Bank, with actual knowledge on their part that the same was done without authority of the board of directors of the Holland Banking Company, without authority of law, without any consideration passing to the Holland Banking Company, and with full knowledge of the wrongful taking of the Holland Banking Company's property and credit, to pay the personal indebtedness owing by said Ed L. Sanford to the Continental National Bank, all to the damage of the Holland Banking Company in the sum of $75,212.55 and interest at six per cent from October 17, 1922, to date for the unlawful detention thereof.

"Plaintiff further states that it has demanded a restitution of said amount and defendant has failed and refused to make the same.

"Wherefore, plaintiff prays judgment for $75,212.55 and interest thereon at six per cent per annum from October 17, 1922, to date, and for costs in this behalf expended."

The answer, in addition to a general denial, alleges that the "deposit credit" was set up on the books of defendant pursuant to a special agreement by virtue of which the deposit could be applied to the satisfaction of Sanford's note whenever defendant so desired, and that said note was the only consideration moving to defendant for the setting up of the credit. Certain matters of estoppel were also pleaded.

The reply is in effect a general denial of the new matter pleaded in the answer.

There is not much controversy as to the facts. Where the evidence discloses conflict, the facts as found by the trial court will be accepted for the purpose of the statement which is to follow.

On and shortly prior to April 9, 1921, the Holland Bank had a capital stock of $250,000, divided into 2500 shares of the par value of $100 each. It had a board of five directors, each of whom was also an active officer of the corporation. E. M. Ferguson was president, J. L. Hine vice-president, and C. E. Randall cashier. The other two directors were Ed L. Sanford and ———— Mitchell. The record is not clear as to their official positions, but apparently Sanford was a vice-president and Mitchell an assistant cashier. Sanford owned a majority of the stock, and dominated the management of the bank; Ferguson had a substantial stock-holding interest; the others owned no stock, but five shares had been transferred to each to qualify him as a director.

At some time within the period just mentioned an agreement was entered into by and between Sanford of the one part and Hine and Randall of the other, whereby Sanford was to sell and transfer to Hine and Randall 1300 shares of the capital stock of the Holland Bank for the sum of $308,000. Thereupon the latter two set about to secure the funds with which to pay for the stock—"to finance the deal." Pursuant to that purpose they went to Kansas City and applied to the National Bank for a loan to them personally of $100,000. The negotiations with respect to the matter were had between Hine and Randall on the one side and J. F. Meade, president of the National Bank, on the other. As a result of the negotiations an agreement was reached to the following effect: The National Bank would loan to Hine and Randall $100,000; they would execute a note for that sum payable on demand, and in connection therewith pledge 674 shares of the Holland Bank as security for its payment; they would pay interest monthly on the sum loaned at the rate of six per cent per annum; the proceeds of the loan would be deposited with the National Bank to the credit of the Holland Bank; the de-

posits under the account so opened would never be permitted to fall below $100,000; to the extent of $100,000 the deposit would not be subject to check or withdrawal; it could be applied by the National Bank to the payment and discharge of the note at any time it so desired; the National Bank would pay to the Holland Bank interest on the general balance from time to time in accordance with the Kansas City Clearing House rules; and a letter would be written by an officer of the Holland Bank to the National Bank confirming the provisions that the deposit would not be subject to check or withdrawal and could be applied at any time to the discharge of the note at the election of the National Bank. After concluding the agreement just mentioned (on April 9, 1921), Hine and Randall returned to Springfield and within a day or two thereafter mailed the National Bank their note for $100,000 with collateral agreement attached, pledging 674 shares of the Holland Bank as security. On April 12, the following letter was sent to the National Bank:

"Holland Banking Company,
"Springfield, Missouri, April 12, 1921.
"Mr. J. F. Meade, President,
"Continental National Bank,
"Kansas City, Missouri.
"Dear Sir:

"Confirming our conversation, we hereby authorize you to charge our account for note for $100,000 signed by me and Mr. Hine, secured by 674 shares of Holland Banking Company stock, any time such note is unsatisfactory to you.

"Will forward you statement at an early date.

"Very truly yours,
"C. E. Randall, Cash."

Following these transactions a credit of $100,000 in favor of the Holland Bank was set up on the books of the National Bank, and the Holland Bank took a like credit on its own books.

Hine and Randall next obtained from the Republic National Bank of St. Louis a loan of $100,000 on essentially the same terms and conditions as that gotten from the National Bank. A credit in favor of the Holland Bank for that amount was set up on the books of the Republic National Bank and a corresponding credit was entered on the Holland Bank's books. After securing these credits in favor of the Holland Bank, aggregating $200,000, Hine and Randall then put in that bank personally secured notes sufficient in amount to make up the balance of the $308,000 which they were to pay for Sanford's stock. After thus increasing the assets of the Holland Bank to the extent of $308,000 in the manner and form just detailed, Hine and Randall proceeded to pay Sanford for his stock. This they did by surrendering to him obligations to the bank in excess of $250,000

on which he was either primarily or secondarily liable, and by placing to his credit on the books of the bank the sum of $54,000 subject to his personal check.

Randall testified that, when he and Hine opened negotiations with the National Bank for the $100,000 loan, they told Meade they were borrowing the money for the purpose of buying Sanford's stock and securing the control of the Holland Bank. Hine testified:

"Well, we outlined the deal to him in its detail and told him our desire of borrowing $100,000 from his bank and we hoped to do the same thing in St. Louis; outlined in general the deal we had made with Mr. Sanford and what our idea of paying for it was. . . . We told him what our deal was with Mr. Sanford and we wanted to borrow $100,000 from his bank and further outlined our plan of paying for the balance of the consideration for the total purchase price." The trial court found the facts to be in accordance with this testimony.

The Hine and Randall note was renewed by them two or three times; they paid the interest on it monthly according to their agreement; and the National Bank credited the Holland Bank's account periodically with interest in accordance with the Clearing House rules. The account, however, was inactive. The Holland Bank made but few deposits for it and apparently drew against it only in emergencies; it occasionally fell slightly below the $100,000 mark, but when that occurred it was immediately brought back by additional deposits to the contract requirement. On one such occasion the following letter was written by Randall as cashier of the Holland Bank:

"Holland Banking Company,
"Springfield, Missouri,
"November 12, 1921.

"Mr. J. C. WILLIAMS, Vice President,
"Continental National Bank,
"Kansas City, Missouri.
"Dear Joe:

"Herewith note for $100,000 duly signed by Hine and myself.

"I notice that our account with you dropped to $93,000 and we are to-day sending you enough to make it $100,000. I don't know what has been running it down, but we are building it up again to the required figures.

"Very truly yours,
"C. E. RANDALL,
"Cashier."

In February, 1922, Sanford bought Hine's and Randall's stock and again went into the control of the Holland Bank. Hine retired at once, but Randall continued as cashier until the following September. As a part of the consideration for the purchase of the stock

Sanford assumed the obligation to pay the Hine and Randall note to the National Bank. Pursuant to an understanding had with that bank, his note was substituted for theirs, subject to the same terms and conditions. At the time of the substitution and in connection with the understanding then had, the cashier of the Holland Bank wrote the National Bank the following letter:

"Holland Banking Company,
"Springfield, Missouri, May 1, 1922.

"Continental National Bank,

"Kansas City, Missouri.

"Gentlemen:

"You will find herewith enclosed notes of $100,000 dated May 1st, payable on demand, signed by E. L. Sanford and secured by 800 shares of stock in the Holland Banking Company.

"This is your authority to charge the note to our account any time you so desire.

"Yours very truly,
"C. E. RANDALL, Cashier."

About the first of September, 1922, the National Bank began pressing Sanford for the payment of his note. On September 8th he remitted $25,000 by draft on a Chicago bank: no further payments being made by him, the National Bank, on October 17, 1922, charged the Holland Bank's account with $75,212.55, the balance due on the note, and then mailed the note to Sanford.

No protest or complaint of any kind was ever made by the Holland Bank or any of its officials with respect to the charging of that bank's account by the National Bank with the balance due on the Sanford note. The Holland Bank closed its doors and was taken in charge by the State Commissioner of Finance, for liquidation, on the 15th day of January, 1924. This suit was commenced by him on the 19th day of August, 1926.

When Sanford went out of the Holland Bank, following the sale of his stock to Hine and Randall, one Wright was made a director in his place: and when Hine and Randall retired in 1922, their places as directors were filled by Sanford and one Rathbone. Neither Wright nor Rathbone owned any stock in fact. As all of the directors were at all times in the active management of the bank's affairs, there were but few, if any, formal meetings of the board of directors as such. Ferguson testified that the special agreement between the National Bank and Hine and Randall, and later between that bank and Sanford, with reference to the deposit account of the Holland Bank, was never brought to the attention of the board of directors of the latter bank, and that he had no personal knowledge of such agreement until after the Holland Bank closed. Wright and Rathbone testified to the same effect.

The chief contention of the appellant, and one that is dispositive of the other questions raised by it, is that the evidence as a whole failed to make a case for plaintiff, and for that reason defendant's demurrer to the evidence offered at the close of the case should have been sustained.

## CONCLUSIONS OF LAW.

As stated, this is an action in the nature of trover for the alleged conversion of personal property. No question is raised with respect to the pleadings or as to the appropriateness of the remedy invoked with reference to the facts alleged. The gravamen of the charges contained in the petition is that the defendant did certain acts which were inimical to or in contravention of the Holland Bank's rights of property in and to the credit for $100,000 or the funds represented by the credit, appearing on the defendant's books in favor of the Holland Bank. What were the property rights so contravened? It is entirely clear that when the deposit credit was first set up, and before any action was taken with reference thereto by the Holland Bank, that bank had no right, title or interest whatever in or to the credit or the funds represented by it. Whatever right or interest it subsequently acquired was derived through the operation of the contract made with the defendant by Hine and Randall. The nature of that contract and the effectiveness of the obligations assumed under it are the first matters requiring consideration.

The deposit was made by Hine and Randall: it was that of their own personal funds. The essence of the contract, with respect to the deposit, was that it would not be subject to check or withdrawal, but would be subject at all times to be applied to the payment and discharge of the Hine and Randall note, at the election of the defendant bank. This contract, notwithstanding that the deposit was received in the name of the Holland Bank, was clearly valid and binding as to Hine and Randall. "A bank deposit is subject to any agreement which the depositor and the banker may make as to it, so long as the rights of third parties are not injuriously affected." [2 Michie on Banks and Banking, sec. 129 (3), p. 925.]

It is said in a memorandum opinion filed by the trial court that the deposit contract entered into between the defendant and Hine and Randall was not made for the benefit of the Holland Bank or in its behalf. If by that it is meant that Hine and Randall in making the contract were acting for themselves and not as agents of the Holland Bank, it is unquestionably true. The contract as originally made was between the defendant and Hine and Randall in their individual capacities, and not as representatives of the Holland Bank. Notwithstanding, under the terms of the contract the deposit was placed to the credit of the Holland Bank, subject to the conditions heretofore mentioned, and defendant had agreed with Hine and Ran-

dall that it would pay to the Holland Bank interest on the deposit in accordance with clearing house rules. Whether such credit or such interest payments would be beneficial to it was for the Holland Bank to decide. It was in no way obligated by what Hine and Randall had done, and had not parted with a dollar of its assets. It could accept the ostensible benefits of the contract, or reject them, just as it chose. But if it did accept the credit, it took it with all of the contract conditions with which it was burdened. This is elementary. [St. Louis v. Davidson, 102 Mo. 149, 14 S. W. 825; Platt v. Francis, 247 Mo. 296, 152 S. W. 332; Cantley, Comr. v. Drainage District, 2 S. W. (2d) 607; Aldrich v. Bank, 176 U. S. 618.] But for the abuse subsequently made of the credit by the Holland Bank's officers the foregoing propositions would be regarded as indisputable. I will deal with that phase of the matter later on.

As stated, the Holland Bank with reference to the contract of deposit, was a stranger to both the contract and the consideration. Its right to the deposit being entirely derivative is to be measured by the terms of the contract. But it is said that at the time it accepted the provisions with reference to the deposit it was ignorant of the limitations and conditions attached thereto, that by reason of such ignorance it was misled to its hurt, and that therefore such conditions and limitations were not binding upon it. If it was so misled it was because of its own laches; it was its duty to have advised itself as to all the terms of the contract before accepting and acting upon it; the very nature of the transaction itself put it upon inquiry. Certainly the defendant did nothing to mislead it: on the contrary the defendant required the Holland Bank to make formal acknowledgment by letter that the deposit could not be withdrawn, but must remain subject to appropriation to the payment of the Hine and Randall note, if and when the defendant so elected. The fact that such acknowledgment was not made by formal resolution of the board of directors, or that a majority of the directors were in ignorance of the matters pertaining to it, is of no consequence. While Randall was negotiating for the $100,000 loan, he was just Randall: when he wrote the letter just referred to on the Bank's letterhead and signed it as cashier, he was representing the Holland Bank, notwithstanding his personal interest in the transaction. [Bartlett v. McAllister, 289 S. W. 814; Kegan v. Park Bank, 8 S. W. (2d) 858.] The Holland Bank was therefore chargeable as a matter of law with knowledge of the contract conditions under which the deposit was made. In addition to that, Meade, the president of the defendant bank, had every reason to believe that the responsible management of the bank did in fact have such knowledge. There is nothing in the evidence which tends in any way to impugn his good faith in that respect.

If the conclusions thus far reached are sound, the Holland Bank, on April 12, 1921 (the date of the first letter written by Randall as cashier), became a depositor of the defendant bank. The deposit, however, was subject to contract conditions and limitations with respect to which the depositor was as a matter of law fully cognizant. It was therefore bound by such conditions and limitations, unless the rights of the parties were affected by the fact now to be considered. That fact is that Hine and Randall told Meade pending their negotiations with him that it was their purpose to use the deposit credit to be set up in favor of the Holland Bank as a cover under which to withdraw from the assets of that bank an equal amount of Sanford's paper to be used by them in paying Sanford for his stock. It is said that this knowledge on the part of Meade as to the purpose of Hine and Randall in having the credit set up operated, as soon as that purpose was carried out, to convert the credit into an absolute and unconditional one. Under what principle of law it would so operate I am at a loss to understand. The contract in its entirety was one which the defendant had an undoubted right to make in the lawful pursuit of its own business; that right was in no way affected by the motive or purpose that was entertained by the other party in negotiating it and in which the defendant did not share. The use that was to be made of the credit was not within the terms of the contract or within any of its implications. What use would be made of the credit by the Holland Bank or its officers was for it or them to decide: it was of no concern whatever to the defendant. Neither the relation of bank and depositor, nor the special agreement under which the deposit in question was made, constituted the defendant guardian or trustee with reference to any of the Holland Bank's affairs. "A bank is not made to exercise supervisory functions over its depositors. It is not sponsor for all its depositors, although it may know the character of their business. Its relations to its depositors are those of debtor; and, generally, in receiving and paying out money on the checks of its depositors, it discharges the full measure of its obligations." [2 Michie on Banks and Banking, sec. 129 (2), p. 925.] The Holland Bank might, or might not, permit Hine and Randall to withdraw the Sanford paper on the strength of the deposit; whether it would or not was for it to determine: it might consider it advantageous to get rid of Sanford's paper, even by the use of that method. But in any event it was of no consequence to the defendant one way or another: it was under no obligation whatever with respect to the matter, and had it assumed the right to interpose it would have been a mere intermeddler. [Rankin, Receiver, v. National Bank of Kansas City, 208 U. S. 541.]

Mere knowledge by one of the parties to a contract of the other's intention to use the subject-matter for an improper or unlawful pur-

**28**

pose does not render the contract as made unenforcible. "The mere fact that a contract, the consideration and performance of which are lawful, incidentally assists one in evading a law is no bar to its enforcement." [State v. Capital City Bank, 53 A. L. R. (New Mexico), 1356, 1363, and cases cited at length in note; see also Michael v. Bacon, 49 Mo. 474; Spragg v. Rooney, 82 Mo. 493.|

It is not contended that the substitution of Sanford's note for that of Hine and Randall in any way affected the rights of the parties to the fund represented by the deposit credit as they had theretofore existed. The Holland Bank's right to that fund was never absolute and unconditional: it was at all times contingent upon the repayment to defendant of the $100,000 loan by those who had assumed the primary obligation to do so. The State Commissioner of Finance as trustee for the Holland Bank stands in its shoes: he could acquire no different or greater right to the fund in controversy than the bank itself had.

Finally, and by way of recapitulation,—this is not a suit for debt, or for damages growing out of fraud; it is an action for the alleged conversion of a bank credit; the Holland Bank's *right* or *title* to the credit in question accrued to it solely through the *contract* entered into between the National Bank and Hine and Randall, and not otherwise; the Holland Bank therefore had such title as that contract invested it with, and no other; the appropriation of the credit to the discharge of the note through which it was obtained *pursuant to the terms of the contract* could not have constituted a conversion.

For the reasons hereinbefore indicated I am of the opinion that the judgment of the circuit court, as to the second count of the petition, should be reversed. *White, C. J.,* and *Walker, J.,* concur.