HOLLAND BANKING COMPANY, In Course of Liquidation, by S. L. CANTLEY, Commissioner of Finance, Appellant, v. REPUBLIC NATIONAL BANK.—41 S. W. (2d) 815.

Division One, September 5, 1931.

*Roscoe C. Patterson, Orin Patterson, Harris & Price, Ruby M. Hulen* and *Farrington & Curtis* for appellant.

*W. D. Tatlow* and *John M. Atkinson* for respondent.

FRANK, J.—This case comes to the writer on reassignment. It is an action in conversion, and was instituted in the Circuit Court of Greene County on August 19, 1926, by C. E. French, then Commissioner of Finance of the State of Missouri in charge of the business and property of the Holland Banking Company of Springfield, Missouri, hereinafter called Holland Bank, against the Republic National Bank of St. Louis, Missouri, hereinafter called National Bank and one E. L. Sanford. The cause was dismissed as to defendant Sanford, and later the venue of said cause was changed to the Circuit Court of Boone County, where, by agreement, S. L. Cantley who succeeded C. E. French as Commissioner of Finance, was substituted for said French as party plaintiff. The petition was in two counts, the first charging the conversion of $50,000 and asking judg-

ment for that amount; the second charging the conversion of $50,-083.35 and praying judgment for that sum. The cause was tried to the court, without the aid of a jury. The court gave certain declarations of law, made certain finding of facts, then rendered judgment for defendant on both counts of the petition, from which plaintiff appealed.

Both the pleadings and the evidence are quite lengthy. The pleadings are not assailed and they sufficiently present the issues. We will state the pertinent facts in connection with the questions discussed.

C. E. Randall and J. L. Hine were officers of and stockholders in the Holland Bank, having purchased from E. L. Sanford and others a majority of the stock therein. In August, 1921, Randall and Hine borrowed $100,000 from the National Bank and executed to said National Bank their individual notes therefor. The $100,000, the proceeds of the loan, was placed on deposit in the National Bank to the credit of the Holland Bank and in turn Randall and Hine were given a deposit credit of $100,000 in the Holland Bank, which they thereafter used in paying Sanford for the stock in the Holland Bank which they had purchased from him. The evidence of both parties shows that at the time the loan was made, it was agreed between Hine and Randall on one side, and the president of the National Bank on the other, that at all times during the life of the loan, the Holland Bank would keep on deposit to its credit in the National Bank an amount equal to the $100,000 loan and at any time the National Bank became dissatisfied with the loan, it was authorized to charge the notes representing the loan against the Holland Bank's deposit. The evidence of appellant tended to show that during the negotiations for the $100,000 loan, Randall informed the president of the National Bank that he and Hine had purchased the majority of the stock in the Holland Bank and desired to borrow $100,000 for their individual use to assist them in completing the purchase of said stock. On the contrary, the evidence of respondent tended to show that Randall did not tell the president of said National Bank anything about the purchase of stock in the Holland Bank, but did tell him that they wanted to borrow $100,000 for the benefit of the Holland Bank, for the purpose of increasing the reserve of said bank. Hine and Randall paid the National Bank interest on the $100,000 loan from their own private funds. The National Bank paid the Holland Bank interest on the $100,000 deposit.

The trial court found that the $100,000 loan was an individual loan to Hine and Randall for their own private purposes and not for the benefit of the Holland Bank; that when Hine and Randall deposited $100,000, the proceeds of said loan, in the National Bank

to the credit of the Holland Bank and took a deposit credit to themselves for a like amount in the Holland Bank, the $100,000 deposit in the National Bank became the property of the Holland Bank. This being a law case, the trial court's finding on these issues, based on conflicting evidence, is conclusive here.

In February, 1922, E. L. Sanford purchased from Hine and Randall a controlling interest in the Holland Bank and became its president. As part payment of the purchase price, Sanford assumed and agreed to pay the $100,000 in notes which Hine and Randall had theretofore executed to the National Bank at the time the loan in question was made. Thereafter and on April 7, 1922, Sanford, as president of the Holland Bank, wrote the president of the National Bank the following letter:

"Please charge the account of Holland Banking Company $50,000 and credit amount on note of C. E. Randall and J. L. Hine, and enclose to us by registered mail as near half of the stock of the Holland Banking Company issued in the name of Messrs. Randall and Hine that you hold as collateral to the note."

On receipt of this letter the National Bank charged the account of the Holland Banking Company with $50,000, credited Hine and Randall's note with a like amount, and on April 8, 1922, so notified Sanford, as president of the Holland Bank, by letter in which was enclosed one-half of the Holland Bank stock which was held as collateral to the Hine and Randall note. On April 10, 1922, the National Bank wrote Sanford, as president of the Holland Bank, the following letter:

"As directed by you on the 8th inst., we charged the account of Holland Banking Company with $50,000 crediting the same on note of Messrs. Hine and Randall. In order to have our records clear, wish you would kindly send us a draft on the Republic National Bank for this amount, under above date, to take the place of the debit ticket, to be signed by some officer not interested in the note."

On the next day, April 11, 1922, Sanford, as president of the Holland Bank, wrote the National Bank a letter, enclosing therein a draft for $50,000 drawn on and payable to the Republic National Bank and signed by C. F. Wright, Assistant Cashier of the Holland Bank. When the National Bank received this draft it made no change on its records, as it had theretofore charged the $50,000 against the Holland Bank's account and credited a like amount on Hine and Randall's note on the authority of Sanford's letter under date of April 7, 1922. On July 6, 1922, the National Bank wrote Sanford a letter insisting upon payment of the balance due on the Hine and Randall notes, the payment of which Sanford had assumed. On July 8, 1922, Sanford as president of the Holland Bank, replied to that letter, enclosing a draft for $50,083.35, drawn on and payable

to the Republic National Bank, and signed by C. F. Wright, assistant cashier of the Holland Bank. This draft was charged against the Holland Bank's account and the amount thereof credited on the Hine and Randall notes, thus completing their payment. It appears from what we have thus far stated that the individual notes of Hine and Randall, the payment of which Sanford had assumed, were paid out of funds which belonged to the Holland Bank.

Prior to 1917 it was the rule in this State that where one accepted corporate funds in payment of the debt of an officer, agent or employee of a corporation, he did so at the risk of being required to return to the corporation the funds so received, in event the payment to him was not authorized by the corporation. [Bank v. Edwards, 243 Mo. 553, 147 S. W. 978; Blake, Trustee, v. Bank, 219 Mo. 644, 118 S. W. 641; Reynolds v. Whittemore, 190 S. W. 594.] This rule was changed to some extent by the enactment of Section 996, Revised Statutes 1919, now Section 2838, Revised Statutes 1929. This statute reads as follows:

"If any check, draft or order of any corporation, firm or copartnership shall be given in payment of the debt of any officer, agent or employee, of said corporation, firm or copartnership, the payee or other person collecting such check, draft or order shall not be liable to said corporation, firm or copartnership therefor, unless it shall be shown that such payee or other person, at the time of collecting same, had actual knowledge that said check, draft or order was issued without authority of said corporation, firm or copartnership."

Respondent invokes the provisions of this statute in support of the trial court's judgment on the ground that there was no showing that the National Bank had *actual knowledge*, at the time it received the two payments on the notes in question, that such payments were made without authority of the Holland Bank.

Appellant concedes that if the payments were made by *check, draft* or *order* of the Holland Bank, the statute invoked would prevent a recovery in this case, unless it was shown that the National Bank, at the time it received such payments, had *actual knowledge* that the *check, draft* or *order* representing such payments was issued without authority of the Holland Bank. It is claimed, however, that the $50,000 payment sought to be recovered under the first count of the petition, was not made by *check, draft* or *order* of the Holland Bank, but was made by the National Bank charging $50,000 against the account of the Holland Bank and crediting that amount on the notes, under authority of Sanford's letter of April 7, directing that it be done in that manner. The contention is that Sanford's letter was not an order of the Holland Bank within the meaning of the statute, and for that reason the statute has no application,

and the case should be determined by the law extant prior to the passage of the statute.

It is true that the officers of the National Bank charged the $50,000 against the Holland Bank's account and credited a like amount on Hine and Randall's notes on the authority of Sanford's letter and before they received the draft. While these officers testified that in making this charge they acted on the authority of Sanford's letter and not on the authority of the draft and made no change on the bank records after receiving the draft, yet a fair consideration of all their testimony justifies the conclusion that they were relying on the draft as their authority for what was done. Mr. Hobbs, vice-president of the bank, was asked this question:

"Q. You acted upon the letter, and not upon the draft? A. At first, yes."

Mr. Lewis, president of the bank, testified that this letter came at a time when he was out of the bank; that when he returned two days later his attention was called to the letter and he then directed Mr. Bainbridge to write a letter requesting that a draft be sent to take the place of the charge ticket, the draft to be signed by some officer of the Holland Banking Company who was not interested in this loan. The evidence shows that this letter was written on April 10. On April 11, Sanford replied to this letter, enclosing a draft for $50,000 drawn on and payable to the National Bank and signed by C. F. Wright, assistant cashier of the Holland Bank. The National Bank received the draft on April 12, marked it paid, substituted it for the charge ticket which had been placed in the files of the bank on the authority of the letter, and at the end of the month, in accordance with the usual custom, the draft was returned to the Holland Bank as a paid voucher, together with a statement of its account.

There is no question but what this transaction was initiated on the authority of Sanford's letter, but when the president returned two days later and learned what had been done, evidently he was not satisfied to rest the transaction on the authority of that letter. His request for the draft and the manner in which the draft was handled after the National Bank received it, tends to show that the transaction, although initiated on authority of the letter, was finally concluded on authority of the draft. The fact that no change was made on the books of the bank after the draft was received, does not necessarily alter the situation. True the charge of $50,000 against the Holland Bank's account, entered on April 8, on the authority of the letter, could have been cancelled and a like charge entered on April 12, the date the draft was received, but the bank could have treated the charge of April 8, as a payment of the draft, and the manner in which the draft was handled tends to show that it did so

treat it. This part of the transaction was a matter of bookkeeping. The rights of the parties should be determined by what actually happened and not by the method of bookkeeping adopted by the National Bank.

The fact that the National Bank, in the first instance, made the $50,000 charge against the Holland Bank's account on the authority of Sanford's letter of April 7, did not destroy the efficacy of the $50,000 draft which it received on April 12, or prevent it from using the draft as a basis for the charge, absent actual knowledge on its part that the draft was issued without authority of the Holland Bank. Whether or not the National Bank used the letter or the draft as its final authority for making the charge against the Holland Bank's account, was, under the evidence, a question of fact. There was evidence that the $50,000 charge was first made on the authority of Sanford's letter. Three days later when the president of the National Bank discovered what had been done, he asked for and received a draft for $50,000, stamped the draft paid, substituted it for the ticket which represented the $50,000 charge made on the authority of Sanford's letter, and at the end of the month, in reconciling the accounts between the two banks, the cancelled draft was returned to the Holland Bank as a paid voucher.

The Holland Bank requested the trial court to find "that said draft was not actually used to reduce the account of the Holland Banking Company in the defendant bank, the same having already been fully accomplished on April 8, 1922, pursuant only to the authority contained in the letter of E. L. Sanford, dated April 7, 1922." The trial court refused to make the finding as requested, but on the contrary did find in paragraph fifteen of its finding of facts that the draft was used as a basis for the charge made against the Holland Bank's account. That finding reads as follows:

"That the board of directors of the Holland Banking Company did not authorize by any order shown by the minutes of said board the issuance of the letter of April 7, 1922, or of the draft for $50,000 dated April 11, 1922, set forth in other items or sections supra, *and used by the Republic National Bank as the basis for the credit made by it in April, 1922, on the Hine and Randall notes then held by it.*" (Italics ours.)

The language of this finding shows that the trial court found that either the draft or both the letter and the draft were used as a basis for the charge made against the Holland Bank's account. In either event the draft would have authorized the National Bank to make the charge against the Holland Bank's account, absent actual knowledge on its part that the draft was issued without authority of the Holland Bank. There was substantial evidence that the draft was marked paid, substituted for the ticket which represented the charge

made against the account on the authority of Sanford's letter, and returned to the Holland Bank as a paid voucher. The finding of the trial court that the draft was used as a basis for the charge was supported by substantial evidence and is, therefore, binding on us. This conclusion renders it unnecessary to determine whether or not Sanford's letter of April 7, directing that a charge of $50,000 be made against the Holland Bank's account and a like amount credited on the notes in question, was an order within the meaning of the statute heretofore quoted.

It is conceded that the $50,083.35 sought to be recovered under the second count of the petition was charged against the Holland Bank's account in the National Bank and a like amount credited on the notes in question, on the authority of a Holland Bank draft for that amount drawn on and payable to the National Bank.

We must proceed on the theory that the amount sued for in each count of the petition was charged against the Holland Bank's account and credited on the notes in question on the authority of two Holland Bank drafts drawn on and payable to the National Bank because the trial court so found on substantial evidence. This being true, the next question is whether or not the National Bank, at the time it charged the drafts against the Holland Bank's account, had actual knowledge that the drafts were issued without authority of the Holland Bank. It is conceded that, under the evidence, this question was one of fact to be determined by the court sitting as a jury. The trial court's finding against the Holland Bank on that issue, put that question at rest.

It was necessary for the trial court to find two facts before a judgment in favor of the National Bank would be authorized, (1) that the National Bank accepted the two drafts in payment of Sanford's indebtedness to it, and (2) that the National Bank did not have actual knowledge at the time it accepted the drafts and charged them against the Holland Bank's account, that such drafts were issued without authority of the Holland Bank. The trial court found these two facts and rendered judgment in favor of the National Bank. That finding and judgment is supported by substantial evidence. Absent prejudicial error in other respects we cannot do otherwise than affirm the judgment. [Sec. 996, R. S. 1919; Sec. 2838, R. S. 1929.]

Appellant contends that the trial court did not commit reversible error, in its finding of facts, its refusal to find certain facts and in the giving and refusal of declarations of law. If the alleged errors are not inconsistent with and do not tend to contradict the finding of the two facts which authorized the judgment, such alleged errors, although erroneous, would not be prejudicial. Appellant reduces its contention in

588

this regard to two propositions. The language of its brief on that subject is as follows:

"The appellate court looks to the trial court's finding of facts and refusal to find facts requested, and to the declarations of law given and refused in order to get the theory upon which the judgment is based. When we apply that rule in this case there can be but one conclusion drawn and that is that the trial court denied recovery upon but two theories: First, that the letter of April 7, 1922, heretofore discussed, was an order within the meaning of Section 996, Revised Statutes 1919. Second, that the board of directors of the plaintiff bank were negligent in their failure to discover that Sanford was paying his indebtedness with Holland Bank funds and in lieu thereof putting bogus notes in the Holland Bank."

Granting that the trial court did treat Sanford's letter of April 7 as an order within the meaning of the statute, how could that prejudice the rights of the Holland Bank? If the court was right in treating the letter as an order within the meaning of the statute, then the National Bank had two documents, the letter and the draft, either of which would have authorized it to make the charge against the Holland Bank's account. On the other hand, if the court was wrong in treating the letter as a valid order, the National Bank still had the draft which authorized it to charge the amount thereof against the Holland Bank's account. Of course, plaintiff claims that the National Bank did not use the draft as a basis for the charge, but for reasons heretofore stated, we have ruled otherwise.

As to the second proposition. Conceding, without deciding, that the court was wrong in finding that the board of directors of the Holland Bank was guilty of negligence in not discovering that Sanford was paying his indebtedness with Holland Bank funds, that finding would not change the situation. Neither negligence nor diligence of the board of directors of the Holland Bank would destroy the statutory right of the National Bank to accept the drafts in question in payment of Sanford's indebtedness to it, absent actual knowledge on its part that the issuance of the drafts was unauthorized.

If it should be conceded, as appellant contends, that the trial court erred in finding that Sanford's letter of April 7, was an order within the meaning of the statute, erred in finding that the board of directors of the Holland Bank was negligent in the respects mentioned and erred in basing its judgment on these alleged erroneous findings, we still have the finding that the National Bank accepted the drafts in payment of Sanford's indebtedness and used them as a basis for the charges made against the Holland Bank's account, without actual

knowledge that drafts were issued without authority of the Holland Bank. This finding was based on substantial evidence and is sufficient to sustain the judgment in favor of the National Bank because the statute expressly so says. [Sec. 996, R. S. 1919; Sec. 2838, R. S. 1929.] Where certain findings of fact made by the trial court are sufficient to support the judgment rendered, the judgment should be upheld even though the trial court based the judgment on other insufficient findings of fact, provided such insufficient findings are not inconsistent with or contradictory to the findings which do support the judgment. The findings on which appellant claims the trial court based its judgment are not inconsistent with or contradictory to the finding that the National Bank used the drafts as a basis for the charges made against the Holland Bank's account, without actual knowledge that the issuance of the drafts was unauthorized. A correct decision will not be disturbed because the court gave a wrong or insufficient reason therefor.

The recent case of Holland Banking Company v. Continental National Bank, 324 Mo. 1, 22 S. W. (2d) 821, is cited in support of the contention that corporate funds may not be given away or taken to pay the individual obligations of the officers or employees of the corporation without the unanimous consent of the stockholders.

The proposition contended for is sound law, but it has no application to the facts of this case. In the cited case, Hine and Randall borrowed $100,000 from the Continental National Bank on their individual notes, under an agreement that the Holland Bank would keep a deposit account with the Continental National Bank of at least $100,000 at all times during the life of the loan, and at any time the Continental National Bank became dissatisfied with the loan, it might charge the notes representing the loan against the Holland Bank's account. The Continental National Bank collected the notes by charging them against the Holland Bank's account. We held the agreement that the Holland Bank's money might be taken to pay the individual notes of Hine and Randall was void and for that reason the Continental National Bank was liable to the Holland Bank for the amount taken from its account under the void agreement.

The facts in the case at bar which distinguish it from the Continental National Bank case is the manner in which the notes were paid. It is true that Hine and Randall borrowed the $100,000 involved in this action from the Republic National Bank on their individual notes, under an agreement that the notes might be collected by charging them against the Holland Bank's account in the Republic National Bank, but this agreement was not relied or acted upon in the collection of the notes and the trial court so found. When the time came to collect the notes, the Republic National demanded payment from Sanford who had assumed the obligation. In response

to this demand, Sanford sent the Republic National Bank two Holland Bank drafts drawn on and payable to said National Bank in payment of the notes. For reasons heretofore stated the Republic National Bank could accept the drafts in payment of the notes without becoming liable to the Holland Bank for the amount thereof.

The judgment should be affirmed. It is so ordered. All concur.