Louis Arnold Maretti, Plaintiff-Appellee, v. Midland National Insurance Company, a Corporation.

Gen. No. 48,834.

First District, Third Division.

May 22, 1963.

Heineke, Conklin & Schrader, of Chicago (Paul H. Heineke and Edwin A. Strugala, of counsel), for appellant.

Traeger, Bolger & Traeger, of Chicago (Lawrence C. Traeger, Jr., of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.
█ This is an appeal by defendant insurance company from a declaratory judgment finding that under

the terms of its policy it is obligated to defend plaintiff (hereinafter called the "insured") in a suit for personal injuries brought against him by one Johnny Miller, a minor. The sole issue is whether the complaint in the personal injury suit stated a cause of action against the insured within the scope and coverage of the policy. No question of fact is involved. Determination of the issue rests on the allegations of that complaint and on the interpretation of the policy. Employers' Liability Assur. Corp. Ltd. v. Youghiogheny & Ohio Coal Co., 214 F2d 418 (Minn 1954); Hardware Mutual Cas. Co. v. Schantz, 186 F2d 868, 872 (Texas, 1951).

The insured is an itinerant exhibitor of fireworks. To protect himself against the hazards of his business, he took out a policy of insurance with defendant company. On August 4, 1957 he exhibited fireworks at premises near Taylor and Halsted streets, in Chicago. Sometime after the exhibition, the personal injury suit against him was commenced in the Circuit Court of Cook County. The complaint alleged that on August 4, 1957 the insured had negligently left live explosive bombs upon the grounds about the area where the display had been presented and that a child, not named, of tender years had picked up one of the live bombs and had playfully thrown it, whereupon it exploded and the minor Miller was seriously and permanently injured. The following grounds of negligence were charged:

Negligently handled said fireworks or explosives;

Failed to count the fireworks and explosives before and after the exhibition;

Selected incompetent and inexperienced agents to handle the same;

19

Left live fireworks and/or explosives about the area after the exhibition;

Failed to provide safety devices.

The trial court held that the complaint in the personal injury suit stated a case within the coverage of the policy, and that the insurance company was obligated to defend.

■ The policy is a standard form of "Owners, Landlords and Tenants Liability" policy. The insured obviousy does not come under any of those designations, but the form, while so designated, is adaptable to a large group of insurable risks. The policy consists of four pages, most of it in small print, and in addition there is a long typewritten rider attached to the first page. We estimate the total number of printed words in the policy itself to run approximately fifty-five hundred and the typewritten rider to contain 500 to 600 more. In construing the policy we must take a view of the entire document, since it is unlike any ordinary contract. It is designed to cover a multitude of risks and therefore is not only a long document, but one of extraordinary adaptability and complexity. The portions which are material to a particular risk are not isolated from the immaterial and can be ascertained only by reference, cross-reference and re-cross reference.

The first heading under the title is "Declarations," under which are four items. Item 1 states the name, address and business of the insured. Item 2 states the policy period. Item 3 provides that the "insurance afforded is only with respect to such and so many of the . . . coverages" as is indicated by the specific premium charge, and it sets out a tabulation of coverages, subdivided into A, B, C and D. For our purpose we need only be concerned with "A. Bodily Injury Liability" which fixes the limits of liability

as to each person at $50,000 and as to each accident at $100,000. Under a section called "Divisions," there is a group of four items connected with bodily injuries. No. 1 shows "Premises-Operations—$350," and the figure "$350" is again shown in the column next to it, under the heading "Premiums." Item 4 of "Declarations" (which is on the first page of the printed form, but hidden by the typewritten rider) is headed: "Description of Hazards," and contains a tabulation of the various risks which can be insured against under the policy, as follows: 1. "Premises-Operations"; 2. "Elevators"; 3. "Structural Alterations, New Construction, Demolition"; 4. "Products-Completed Operations"; and 5. "Contractual-Specified Types of Agreements." Under Section 1—"Premises-Operations" is typed: "Fireworks exhibitions—contractors risk only—715 cs per $100 of gross receipts," and other figures indicating on what the premium was based, which is not relevant here, but it again shows the premium as $350." In each space reserved for risks 2 through 5 are typed the words "Not covered." The relevance of this, as argued by the insurance company, will be hereinafter discussed.

The rider, designated "Special Insuring Agreements Endorsement," undertook to adapt the form policy to the needs of a fireworks exhibitor. It curtailed coverage by requiring that the insured inform the insurance company of any proposed exhibition prior to the date thereof. It also stated the conditions under which coverage could be afforded to others who had contracted with the insured for the exhibition of fireworks.

Page 2 of the printed form constitutes the insuring agreements, under which are four divisions. Under Item 1 is

"Coverage A . . . pay on behalf of the insured all sums which the insured shall become legally

21

obligated to pay as damages because of bodily injury . . . sustained by any person, caused by accident and arising out of the hazards hereinafter defined."

Under Item 2 is the following:

"(a) defend any suit against the insured alleging such injury . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . ."

Other provisions under the title "Definition of Hazards" which are specifically relevant are "Division 1—Premises-Operations," which refers to: "The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto," and "Division 4—Products-Completed Operations" which reads:

"(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for the use of others but not sold.

"(2) Operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented

22

or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed 'operations' within the meaning of the paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 4 of the declarations specifically includes completed operations."

There is on the same page and toward the bottom thereof a long list in small type called "EXCLUSIONS," under which are the words: "This policy does not apply:" following which is a long itemization, running from (a) to (n). Under item (c), which in turn is divided, is the following statement: "under division 1 of the Definition of Hazards . . . to . . . (2) the Products-Completion Operations Hazards. . . ." This is the exclusion which the insurance company would apply in the instant case, and it should therefore be considered in conjunction with the provisions which the insured contends cover the risk here involved.

█ The "Premise-Operations" division of the policy covers accidents which arise out of the operation of a fireworks exhibitor. Part of the operations incidental to such an exhibition is the removal of any live bombs which might be lying about after an exhibition. Therefore, accidents caused by failure to remove bombs from a display area and which occur after termination of an exhibition are insured against under the "Premises-Operations" division, unless it can be said that such coverage is clearly and unam-

23

biguously excluded by some other provision of the policy.

It is argued by the insurance company that since coverage for such an accident as here occurred was afforded under the "Products-Completed Operations" division, it was thereby excluded from the coverage afforded under the "Premises-Operations" division pursuant to the "Exclusion" clause; that the insured did not pay for such coverage and hence, under Item 3 of the declarations (which provides that the insurance afforded is only with respect to coverages and divisions as are indicated by specific premium charges) he is not entitled to be so covered. The question is whether these provisions curtail the general coverage granted by Division 1 for accidents arising from "All Operations."

This is a case of first impression in Illinois. Other jurisdictions, as in most cases dealing with interpretation of the complex interrelated provisions of an insurance policy, are divided. Some courts in considering such provisions have distinguished between contractors and manufacturers or sellers of products. Hoffman & Klemperer Co. v. Ocean Accident & Guar. Corp., 292 F2d 324 (Ill, 1961); Travelers Indemnity Co. v. Nielson, 277 F2d 455 (Iowa, 1960) (affirming 174 F Supp 648). Item 1 of the Declarations stated that the insured's business was "Fireworks Exhibitor" and Item 4 stated that the insurance purchased under Division 1, "Premises-Operations" was limited to *"contractors'* risk only." Therefore, with reference to the policy the insured was a contractor and acquired such coverage as the policy afforded contractors. It has been held that where a contractor is engaged in activities which do not involve the manufacture or sale of a product, the provisions of a comprehensive liability policy held by him relating to hazards arising from *products* are ambiguous and the policy should

24

be construed to cover accidents arising from the insured's operations, whether the accident occurred before or after completion of the operation. McAllister v. Century Indemnity Co. of Hartford, 24 NJ Super 289, 94 A2d 345 (1953); Kendrick v. Mason, 234 La 271, 99 So2d 108 (1958); Travelers Indemnity Co. v. Nielson, supra; Ocean Acc. & Guar. Corp. v. Aconomy Erectors, Inc., 224 F2d 242 (Ill, 1955); Hoffman & Klemperer Co. v. Ocean Acc. & Guar. Corp., supra; Heyward v. American Cas. Co. of Reading, Pa., 129 F Supp 4 (SC, 1955).

■ The insurance company seeks to distinguish these cases on the ground that the provisions of the policies with respect to products were headed, simply, "Products," whereas, in the instant case, the applicable provision, "Division 4," is headed "Products-Completed Operations." It is our opinion that "Products-Completed Operations" applied to a contractor is still ambiguous. Perhaps it is not as ambiguous as the word "Products," but nevertheless there is still ambiguity. Hoffman, etc. v. Ocean Acc., supra.

In the case last cited, a building contractor cleaned and tuckpointed the front surface of a building. After completion, a porch railing ripped out of the building, causing one McGoy to fall from the second floor. The policy contained the *exact* provisions now before this court. The insurer refused to defend, asserting the *exact* defense raised in the instant case. When faced with the cases hereinbefore cited as authority for the proposition that such a policy is ambiguous, the insurer argued the *exact* distinction the insurance company now argues. The court rejected the distinction.

Two cases cited by the insurance company, Baker v. Maryland Cas. Co., 73 RI 411, 56 A2d 920 (1948) and Butler v. United States Fidelity & Guar. Co., 197 Tenn 614, 277 SW2d 348 (1955), are not fairly distinguishable. However, it does not appear that there

25

was attached to those policies the long rider attached to the policy here. Assuming the policies were essentially the same, with all due respect to the views of those courts, we must reject their conclusions.

Other cases cited by the insurance company are distinguishable both on the facts with respect to the character of the operations, the complexity of the exclusionary provisions of the policy, and the lack of a rider, such as the one before us, making a form policy applicable to the needs of the insured. Thus, in Zingale v. American Surety Co. of N.Y., 146 NE2d 317 (Ohio, 1957), one of the cases cited, a plumbing contractor included the installation of a toilet as part of his contract with the owner of the building. The contract was entered into in 1950, the work was completed in April 1951 and the injury occurred in January 1952. The claim was that the injury occurred as the result of a defective condition when a trip lever which flushed the toilet broke. There were two policies involved, the first designated as "Manufacturers and Contractors Policy," issued for the period of one year beginning May 22, 1950 and the second issued May 22, 1951 for a like period. Each contained a provision that the policy applied only to accidents which occurred during the policy period. So far as appears from the opinion, the policies, which are similar to the one in the instant case, contained two provisions, one relating to "Premises-Operations," and one to "Independent Contractors." The distinction between that case and the one at bar is that there a product was involved which was to be in continued usage, rather than an enterprise which was completely operational, and it was the obvious intention that the insurance with respect to the use of the product was limited to the period of the policy. While fireworks might in some sense be products, they are not products which are in continued use, such as a plumbing fix-

26

ture, and they were in the instant case part of a single operation.

In Crook v. Kalamazoo Sales & Service, Inc., 82 RI 387, 110 A2d 266 (1954) cited by defendant, the purchase of an oil and gas range was involved. A fire occurred in the house in which the range was being used and it was claimed that the condition of the range was the cause. It was held that the insurance policy did not cover that type of liability. There is a marked distinction between that case and the instant one, in that it cannot be said that the fire occurred as a part of the actual operation in which the insured was engaged. Other cases cited by the insurance company are likewise distinguishable. It would serve no good purpose to extend this opinion by taking each of the numerous cases cited and pointing out differences in facts and in the policy in each.

Counsel for the insurance company has skillfully and forcibly argued that standardization has enabled the general distribution of products at reasonable prices not otherwise available to a large portion of the public. Mass production, he says, has in substance been extended to insurance coverage, which makes insurance available at cheaper rates by the adoption of extensive types of coverage, which being spread over a larger group is less expensive, but can provide coverage which seems suited to the insured; that the policy has been developed in general form, not for the benefit of the insurer alone and not for the purpose of overreaching, but that the "policy fractionalizes and makes possible lower premium payments to insureds, depending upon their respective needs and interests, as plainly indicated on the face of the policy issued."

In a case which revealed a fair opportunity for an insured to know what he was receiving, such

argument would be persuasive. No layman and indeed no lawyer other than one who specializes in such matters can without considerable study understand the provisions which qualify the general risk here insured against. An examination of the policy involves physical and mental effort of no mean proportions. In addition to the four printed pages (the first of which consists largely of a form filled in on a typewriter), a rider is attached to the first page in such a way that it hides the most important provision of the policy, that is, that provision which designates the coverage purchased. The policy contains such a bewildering array of exclusions, definitions and conditions that the result is confounding almost to the point of being unintelligible. There emerges through the confusion only one clear intention, that is, that the insurance company agreed to insure against risks incidental to the exhibition of fireworks. We construe the policy as covering liability for all accidents arising from the insured's operations, whether the accident happened during or after the exhibition was completed.

We take note of the fact stressed by counsel that many state departments of insurance now supervise and regulate the insurance business and, as a consequence thereof, there has been a mollifying tendency in the courts with respect to the interpretation of insurance policies. The rule still prevails, however, not only as to insurance companies but as to all others, that where a provision is ambiguous, the contract is construed against the drafter of the instrument.

The insurance company is obligated to defend the insured in the personal injury action.

Judgment affirmed.

DEMPSEY, PJ and McCORMICK, J, concur.