SERVICE CONSTRUCTION COMPANY,
Plaintiff-Appellant,

v.

Carl NICHOLS and Eugene Nichols, d/b/a Nichols Construction Company, and L. S. Lepchenske, Defendants-Respondents.

No. 8233.

Springfield Court of Appeals.

Missouri.

April 24, 1964.

George B. Scott, Jr., Poplar Bluff, for plaintiff-appellant.

Clarence A. Powell, John W. Ringer, Powell, Jones and Ringer, Dexter, for defendants-respondents.

HOGAN, Judge.

Plaintiff, a corporation, instituted this action to recover for labor and materials furnished in the construction of a parking area and driveway, and to establish a mechanic's lien against the land upon which they were located. The claim for a mechanic's lien was dismissed at the close of plaintiff's case and only incidentally concerns us here. Upon trial to the court, plaintiff had judgment against the defendants Carl and Eugene Nichols, as the general contractors, upon their admission that they owed the sum of $503.84. After an unavailing motion for new trial, plaintiff has appealed, setting up error in the admission of certain evidence and maintaining that the trial court should have allowed the full amount of its claim, which was $3,122.15.

In April 1961 the defendants Nichols, under the name Nichols Lumber Company, or Nichols Construction Company, entered into a contract with Lepchenske and his wife for the construction of a filling station at the corner of U. S. Highway 60 and McCullen Avenue in Dexter, Missouri. Upon completion, the property was to be used as a Shell Oil Company service station, and the contract called for construction according to detailed plans and specifications provided by Shell. Though the contractual arrangements between Shell and the property owner do not appear of record and have no particular significance on this appeal, it does appear that Shell retained some measure of indirect control and supervision over the construction.

Among other things, the detailed plans called for the installation of an asphalt parking area and driveway, apparently to cover an area somewhat in excess of 1,100 square yards. The plans and specifications called for two-inch asphaltic concrete pavement to be laid over a six-inch rock base, and elaborate directions were provided for proportioning, mixing, placing and rolling the aggregate and asphalt to be used. Whether or not literal compliance with these was required, provided the end result was satisfactory, is left in some doubt by the record.

Some time early in September, Mr. Landuyt, who was president of the plaintiff corporation, approached the Nichols firm with a written "proposal" concerning the pavement. The plaintiff offered to cover or pave an area of 1,143 square yards "with two inches of asphaltic mix" at a cost of $2.10 per square yard. It was provided that the plaintiff was to furnish all materials, labor and equipment, and was "to do the job in a workmanlike manner." Upon acceptance, the proposal or offer was to constitute a contract between plaintiff and the Nichols firm.

Both parties admitted execution of the contract, and there seems to be no serious question that plaintiff did prepare the base and pave the driveway and parking area. The two principal areas of controversy upon the trial were whether, in the first place, the plaintiff had agreed to use the asphalt mix prescribed by Shell in the plans and specifications but had actually substituted a cheaper and inferior preparation, and, in the second place, whether the paving material laid down by the plaintiff was suitable for use as a service station driveway and parking area, regardless of its composition.

Though we do not seek to brush aside or ignore any of the arguments advanced here by the parties, we consider the first of these controversies or factual disputes to be largely immaterial upon this appeal. The defendants maintained that the plaintiff had represented it would use the asphalt mix called for by the specifications, but had in fact used another less expensive and less durable mix, and for that reason

the pavement had proved unsatisfactory. The plaintiff, on the other hand, took the position that both parties had understood that the materials being furnished by the plaintiff did not meet the Shell specifications. So far as we can determine from the record before us, the evidence leaves this matter largely unresolved. Though various witnesses testified at considerable length concerning the composition and qualities of different types of asphalt mix, the terms "asphaltic concrete" and "asphaltic mix" appear to be generic terms, conveying different impressions to different minds at the same time. And though a great deal was made at the trial of the superior qualities of the so-called "hot mix" as compared with a "cold mix," we cannot confidently say that the complexities of asphalt paving were sufficiently developed by the evidence for us to form a judgment whether plaintiff, by common custom and usage, implied that he would use one kind of mix and subsequently used another, or that the accomplishment of a satisfactory result depended upon the plaintiff's use of a "hot mix" as against a "cold mix," as contended by the defendants. For that matter, the defendants' argument that they were misled into believing that the plaintiff would use the kind of pavement specified in the original contract is, in our view, somewhat overstated in light of the fact that the contract between plaintiff and defendants clearly states that it "covers all agreements between us," and in view of the fact that defendant Carl Nichols, being pressed as to what he actually said to the plaintiff's representative during their contract negotiations, stated that he had told Mr. Landuyt that "as long as the Shell representatives were satisfied with the job * * * we would be tickled to death."

Much more to the point upon the merits of this case is the controversy or dispute over whether the pavement laid down by the plaintiff ever "cured out" or hardened sufficiently to become firm and stable enough for use as a service station drive-way and parking lot. It was not seriously questioned by the defendants that the plaintiff company had done most, if not all, of the work which it had contracted to do. By means of a progress report or "worksheet on cost" prepared by the plaintiff in the regular course of business, and introduced in evidence, it was shown that the plaintiff had, between November 2, 1961, and May 2, 1962, furnished labor and materials somewhat in excess of the original contract price, and it is conceded that paving material of some sort was put down. What the parties are in basic disagreement about, and the principal disputed issue at the trial, is whether the materials put down by the plaintiff ever actually became pavement.

While the plaintiff produced no witness who was present at all times, it sufficiently appears from the testimony of its officers, and from the records produced by the plaintiff at the trial, that work was begun on the project on November 2, 1961, and continued at various times until December 2, when, as defendant Carl Nichols put it, "the weather set in bad," and the plaintiff was obliged to suspend operation until April 3, 1962. Work was again resumed, and by May 6, 1962, the project was finished. If plaintiff's somewhat arbitrary cost figures are used, the total amount of labor, materials and equipment furnished somewhat exceeds the original contract price.

The defendants, who were unfamiliar with the subject of asphalt paving, did not undertake to supervise the plaintiff in the performance of the work and "didn't go by during the construction period." When the defendants did inspect the surface, a "day or two" after it had been laid, defendant Carl Nichols observed "bicycle tracks, depressions where kids had driven over it, and it wouldn't hold that up," and when Mr. Nichols inspected the pavement again the following week, he found "tire tracks" "three-quarters to over an inch" deep, with water standing in them. Mr. Nichols then contacted Mr.

Landuyt and was told that "it would cure out," and the record indicates that the plaintiff then made several attempts to correct the soft condition of the pavement.

It is enough to say that their efforts were unsuccessful and that the pavement remained soft, although it is not at all clear why. We may infer from the record that asphalt paving of this type normally "cures" or hardens over a period of two days to two weeks, and the plaintiff's officers insisted that the "major portion" of the pavement did "cure out" and would, in time, have been serviceable. The defendants' evidence left no doubt, however, that the pavement remained soft some six weeks after it was laid and was finally rejected by the Shell engineers as unsuitable for their purpose. Finally, the defendants were obliged to have the plaintiff's pavement removed and replaced, at a cost of $2,530.00, and upon the trial they conceded again that they owed the difference between the contract price and this cost of replacement.

On this appeal the plaintiff develops two principal points. First, the plaintiff maintains that the trial court should have excluded evidence bearing on the reasonable value of plaintiff's services because, as we understand, the case was submitted upon the theory that there had been a breach of an express contract, and therefore adequacy of the consideration was not in issue. In support of this argument, the plaintiff cites Young v. Hall, Mo.App., 280 S.W.2d 679, 681 [3–5], in which this court held that recovery on a counterclaim based upon a breach of an express contract could not be sustained upon evidence supporting only a recovery in quantum meruit. The plaintiff further argues the sufficiency of the evidence generally, maintaining that the trial court should have found for the plaintiff in the full amount claimed.

To discuss the plaintiff's first point clearly, it is necessary to consider, at least briefly, the plaintiff's theory of the case as it was pleaded and submitted to the trial court. The plaintiff's petition is brief and, after alleging the corporate existence of the plaintiff company, sets out serially that the defendants are justly indebted to the plaintiff in the sum of $3,122.15 for materials, work and labor done by the plaintiff "at the request of said defendants," as shown by an attached and incorporated schedule; recites that the items claimed were furnished in improving certain described real estate; states that the defendants were the original contractors; that demand had been timely made and by implication that payment had been refused; and, after pleading compliance with the requirements of Sections 429.080, 429.-090 and 429.100, prayed judgment in the sum of $3,122.15 and for the imposition of a lien upon the property described. The attached schedule (listing the items claimed) set forth the work, labor and materials furnished under plaintiff's contract, and it also listed two items not covered by the contract. No copy of the contract was attached, nor was the contract alleged either in haec verba or according to its effect.

The defendants, in their responsive pleading, alternatively tendered the general issue and, after pleading various matters of inducement, generally alleged breach of the plaintiff's contract on the ground that by implication the plaintiff had agreed to comply with Shell's specifications. As alternative defenses, the defendants pleaded further that plaintiffs had falsely represented that the pavement to be furnished would be hot asphalt mix, when in fact it was not, and also alternatively pleaded, by way of recoupment, that the work "was so constructed that it was of little or no value," and generally pleaded damages in the sum of $2,530.00, representing the cost of replacing the allegedly defective pavement. The affirmative answer specifically admitted that defendants Nichols were indebted to the plaintiff in the sum of $492.15, with interest. By way

of counterclaim, the defendants realleged the averments of their answer and additionally set out various items of incidental damage because of plaintiff's breach of contract, then prayed judgment in the amount of $182.03. The defendants also filed an offer of judgment in the amount of $492.15.

In determining what a party's theory of an action was, in the court of first instance, it is always proper to look to the pleadings, Young v. Hall, supra, 280 S.W.2d 679, 681 [2], even though they do not, in this case, fully determine the nature of the action. Aside from the averments showing compliance with the mechanic's lien statutes, the framework of plaintiff's petition is simply that the defendants are justly indebted to the plaintiff for services rendered and materials furnished at defendants' instance and request. Performance and the time of performance and delivery are alleged, the character and nature of the services are stated, and by implication a promise to pay is raised. While it is unnecessary to characterize the pleading precisely, any superficial examination of the precedents will show that these allegations declare upon one of the quantum counts in general assumpsit.[1] Of course, it was not the pleader's primary object to secure a money judgment against the defendants but to establish its lien claim, and it is possible in certain circumstances to establish a lien claim either by declaring upon an express contract or in quantum meruit,

K-V Builders, Inc. v. Thomas, Mo.App., 353 S.W.2d 130, 135 [2–4]; Rust Sash and Door Co. v. Bryant, Mo.App., 124 S.W.2d 544, 549 [12, 13]; and strictly speaking, the forms of an action have been abolished. Rule 42.01; Section 506.040.[2] Therefore it is probably inaccurate to say that the form of this action can be characterized from the pleadings alone. Even so, the parties must, on appeal, adhere to the theory presented below,[3] and the parties may not now repudiate their own characterization of the action, or construction of the pleadings in the trial court.[4]

It is true that during the course of the trial the plaintiff introduced its contract with the defendants in evidence, but this is not, as defendants maintain, inconsistent with an action upon quantum meruit; rather, it affords prima facie proof of the value of the services rendered, and as such is properly received in evidence even when recovery is sought upon quantum meruit and not upon the contract. Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 838, 253 S.W.2d 824, 829 [5]; K-V Builders, Inc. v. Thomas, supra, 353 S.W.2d at 135; American Surety Co. of New York v. Fruin-Bambrick Constr. Co., 182 Mo.App. 667, 675, 166 S.W. 333, 335 [3]. Having offered the contract in evidence, the plaintiff's counsel in this case went rather elaborately into the reasonable value of the services rendered by introducing a "worksheet" which listed, item by item, the units of labor and materials which had been furnished, and

1. Warder v. Seitz, 157 Mo. 140, 149, 57 S.W. 537, 539; Klein v. Terminal R. Ass'n of St. Louis, Mo.App., 268 S.W. 660, 663 [2]; 58 Am.Jur., Work and Labor, § 57, p. 557; Shipman, Common Law Pleading, § 123, pp. 256–57 (3rd. ed. 1923).

2. All references to statutes and rules are to RSMo (1959), V.A.M.S. and V.A.M.R., unless otherwise noted.

3. Johnson v. Fotie, Mo., 308 S.W.2d 662, 667 [4, 5]; Gilliam v. Gohn, Mo., 303 S. W.2d 101, 108 [15, 16]; Smithpeter v. Wabash R. Co., 360 Mo. 835, 852, 231 S. W.2d 135, 146 [17], 19 A.L.R.2d 950, 953; Simmons v. Friday, 359 Mo. 812, 818–819, 224 S.W.2d 90, 93–94 [5].

4. Gover v. Cleveland, Mo.App., 299 S.W. 2d 239, 243 [10, 11]; Kelley v. National Lead Co., 240 Mo.App. 47, 55, 210 S.W. 2d 728, 731 [1, 2]; Clardy v. Kansas City Pub. Serv. Co., 227 Mo.App. 749, 753, 42 S.W.2d 370, 372; 4 C.J.S. Appeal and Error § 241d(1), pp. 730–731.

stated that he was doing so because "you can recover on a quantum meruit as well as a contract * * * and we're showing the reasonable cost of it." Having thus characterized his own action, we think counsel may not now renounce it here, Gover v. Cleveland, supra, n. 4, 299 S.W. 2d at 243 [10, 11]; Rodgers v. Levy, Mo. App., 199 S.W.2d 79, 81 [1–3], and we conclude that plaintiff's theory, as *actually developed* and *presented* in the trial court, was quantum meruit.

The plaintiff's claim of error in the reception of evidence must be viewed in this light. The evidence, we take it, to which plaintiff objects consisted of a showing that the plaintiff had done comparable work in the same locality, on relatively similar projects, at a substantially lower figure. More precisely, it was shown that the plaintiff had laid pavement which one of its officers called "comparable" at Poplar Bluff for $1.00 per square yard, and had bid on somewhat similar work in Dexter for approximately 89 cents per square yard, as against the plaintiff's charge of $2.10 per square yard for the project in question here. Considering the evidence as a whole, it must be borne in mind that the plaintiff had introduced its "worksheet" on the basis that the charges reflected therein were those customarily made in the industry; the charges shown were said to be arbitrary but standard. It is apparent to us that the force of this evidence was to show that plaintiff's charges—and plaintiff sought recovery for extra items, for which there was no agreed price—were those customarily made by paving contractors in the area for similar work. We may concede that it was proper, in an action upon quantum meruit, to show what is usually charged for similar work in the same locality. Glover v. Henderson, 120

Mo. 367, 380, 25 S.W. 175, 178; Beebe v. Columbia Axle Co., 233 Mo.App. 212, 226–227, 117 S.W.2d 624, 634 [19]; 32 C.J.S. Evidence § 593d, p. 452.

Generally speaking, evidence should be received subject, where appropriate, to a limiting instruction, if it is admissible for any purpose.[5] It was essential, if plaintiff was to recover in quantum meruit, that its proof show that the charges made were fair and reasonable, Williams v. Cass, Mo.App., 372 S.W.2d 156, 161 [10, 11]; Hutchinson v. Swope, Mo.App., 256 S.W. 134, 135 [1–4], and its proof of reasonable value was properly received. However, it does not follow, as the plaintiff seems to maintain, that the defendants' evidence concerning the actual value of the services and materials furnished bore solely upon their affirmative counterclaim. They may indeed have set up their allegations of misrepresentation by the plaintiff in the belief that plaintiff sought recovery upon an express contract, and perhaps in an attempt to avoid the parole evidence rule, but they were not limited to making proof on their counterclaim. They had pleaded a general denial and were entitled to prove matters showing that the reasonable value of plaintiff's services were less than it claimed. Brush v. Miller, Mo.App., 208 S.W.2d 816, 819 [2, 3]; John O'Brien Boiler Works Co. v. Sievert, Mo.App., 256 S.W. 555, 557. The evidence complained of directly controverted one of the essential elements of the plaintiff's case, that is, that the charges made were fair and reasonable. Since it was admissible for that purpose, we consider that it was properly received.

In any event, the admission or exclusion of evidence is not necessarily determinative of this appeal. The case

5. Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319, 329 [14, 15]; Louis Steinbaum Real Estate Co. v. Maltz, Mo., 247 S.W.2d 652, 656 [8], 31 A.L.R.2d 1052, 1053; Scott v. Missouri Ins. Co., 361 Mo. 51, 59, 233 S.W.2d 660, 665 [9]; State ex rel. Kansas City Pub. Serv. Co. v. Shain, 345 Mo. 543, 549, 134 S.W.2d 58, 61 [3]; McCormick, Evidence, § 59, pp. 135–36.

was tried to the court without a jury, and it is our duty to try the case de novo upon the law and the evidence, deferring to the trial court's findings upon controverted factual matters. We may set aside the judgment only if it is clearly erroneous. Rule 73.01(d); Section 510.310 (4); K-V Builders, Inc. v. Thomas, supra, 353 S.W.2d 130, 132 [1]. It does not appear from this record what ground the trial court acted upon, but that is immaterial so long as the result can be justified upon any legal theory consistent with the pleadings. City of St. Louis v. Evans, Mo., 337 S.W.2d 948, 954 [2]; Producers Produce Co. v. Industrial Commission, 365 Mo. 996, 1004, 291 S.W.2d 166, 170 [1]; Holland Banking Co. v. Republic Nat'l Bank, 328 Mo. 577, 588–589, 41 S.W.2d 815, 820 [8]. In bare outline, the record shows the case to be that the plaintiff sought to establish a mechanic's lien for doing certain paving under a subcontract with the principal contractors, the defendants. The execution of the contract is admitted. Though the defendants strongly maintain that the nature of the plaintiff's undertaking was misrepresented to them, the record is susceptible to the construction that both plaintiff and defendants knew the pavement was to be used by Shell Oil Company, and were of the opinion that Shell would probably approve something different from the type of pavement specified if it was satisfactory upon inspection. The trial court could reasonably have found that the plaintiff did lay a pavement, that a considerable amount of labor and materials were expended by the plaintiff in doing so, and that the plaintiff's charges were reasonable. However, although the contract specified that the plaintiff would "do the job in a workmanlike manner," the pavement failed to cure or harden properly; the reason why it remained soft is not altogether clear from this record. Both the defendants and the owner of the premises complained, and the plaintiff made some effort to correct or rectify the unsatisfactory condition of its work. The plaintiff's officers maintained that the pavement would eventually become hard or "cure," but a number of witnesses, some of them experts, testified that the plaintiff's pavement would never become firm enough for use as a service station driveway and parking area. The plaintiff's work was in fact rejected by the Shell representatives, and it seems clear that the pavement remained soft long after it should have cured or hardened. The defendants, either losing confidence or patience, had the plaintiff's pavement removed and replaced by another contractor at a cost of $2,530.00. In dong so, they admittedly retained benefits reasonably worth $492.15. The plaintiff sued for the sum of $3,122.15, which included at least one extra item for $100.00. This extra work was shown to have been rendered at the request of the prospective lessee of the station and not at the defendants' request. The trial court entered judgment for the plaintiff in the sum of $503.84, which the defendants admitted owing, and which was tendered after suit was commenced. The trial court also assessed costs from the date of tender against the plaintiff. The judgment represents the amount which the defendants confessed to be due, $492.15, with interest to the date of tender.

 Whatever the original theory of its pleading, the plaintiff sought recovery of the sum of $3,122.15. The defendants pleaded, among other things, that the work was so constructed that it was "of little or no value." The judgment, it will be seen, represents the difference between the amount claimed to be due by the plaintiff and the cost of replacing the pavement, less the $100.00 extra item which was admittedly done at the prospective lessee's request. A part of the plaintiff's contract, express or implied, was the obligation to lay the pavement in a skillful and workmanlike manner so it would be reasonably adapted

to the purposes for which it was intended.[6] Whether or not the pavement had been laid in a workmanlike manner was a fact question, Smith v. Clark, 58 Mo. 145, 146, and the conflict on this point was a matter for the trial court to resolve. Since the defendants specifically alleged that the pavement was constructed of defective materials and was "of little or no value" as constructed, they were entitled to show a lack of skillful workmanship as a purely defensive matter if the action be construed as one upon the contract, Lewis v. Oliver, Mo.App., 220 S.W.2d 748, 752 [1, 2]; Brush v. Miller, supra, 208 S.W. 2d at 820–821, or they were entitled to show the same matters as purely defensive material under their general denial, if the action is viewed as one upon quantum meruit. Brush v. Miller, supra, 208 S.W. 2d at 819 [2, 3]; John O'Brien Boiler Works v. Sievert, supra, 256 S.W. at 557. Proof of defective workmanship could, in either event, be considered solely in reduction of diminution of plaintiff's claim without reference to the defendants' counterclaim, Brush v. Miller, supra, 208 S.W. 2d at 820, and upon proof that the unsatisfactory condition of the plaintiff's pavement made its removal and replacement necessary, the trial court could properly have diminished the plaintiff's recovery in the sum of $2,530.00, which was the cost of replacement. Upon the record presented, the court could have found that the defendants did not request performance of the $100.00 item. The offer of judgment after the action was commenced stopped the running of costs from the time of the offer. Lemaire v. Strassberger Conservatories of Music Co., Mo.App., 179 S.W. 959, 963 [4].

The judgment is therefore affirmed.

RUARK, P. J., and STONE, J., concur.

6. Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co., 7 Cir., 111 F.2d 875, 878–79 [8–10]; Brush v. Miller, supra, 208 S.W.2d at 818 [1]; Usona Mfg. Co. v. Shubert-Christy Corp., Mo.App., 132 S.W.2d 1101, 1104 [13]; John O'Brien Boiler Works Co. v. Sievert, supra, 256 S.W. at 557 [1–5]; 4 Williston, Contracts, § 1014, pp. 2792–93 (Rev. ed. 1936).