Guido MORRIS, Plaintiff-Respondent,

v.

The WESTERN CASUALTY AND SURETY
COMPANY, a corporation, De-
fendant-Appellant.

No. 8680.

Springfield Court of Appeals,
Missouri.

Oct. 25, 1967.

Allen, Woolsey & Fisher, Russell G. Clark, Springfield, for defendant-appellant.

Mann, Walter, Burkart, Weathers & Schroff, Glenn A. Burkart, Springfield, for plaintiff-respondent.

TITUS, Judge.

The defendant-appellant in this declaratory judgment action is The Western Casualty and Surety Company (hereafter called "Western"), who had issued to plaintiff-respondent, Guido Morris, a "Manufacturers' and Contractors' Liability Policy" of insurance which was in force at all times here concerned. In February 1964 Morris, as an individual operating a plumbing, heating and electrical business out of his home in Fair Grove, Missouri, agreed to do "electrical wiring" for Charles Edel. Morris does not manufacture any products and is not in the business of selling goods. Any materials used in the performance of services for customers are purchased by Morris from distributors "boxed [or] in open bulk." The "electrical wiring" work was completed, accepted and paid for by Edel in April 1964 and "all that [Morris] was supposed to do had [then] been completed. * * * There was no agreement between [Morris] and Mr. Edel that [Morris was] to go back to do further work." Edel has claimed in a suit filed against Morris that on July 2, 1964, he was injured and damaged by "electrical shock" because "Morris defectively wired [Edel's] home in that * * * Morris failed to provide means of disconnecting all sources and supply of electricity." Western declined to defend the damage suit which is still pending. The explanation given for its refusal is the work performed for Edel by Morris had been completed when the alleged accident occurred "away from premises owned, rented or controlled by" Morris and this would be included only in coverage for "Products—Completed Operations" which Morris did not have. A jury was waived for the trial of this cause in the Circuit Court of Greene County and Western was adjudged obligated to defend Morris in the damage suit and pay any judgment which might be rendered there-

in against him up to the policy limits of $5,000. Western was also declared to be indebted to Morris in the sum of $200 for attorneys' fees he had paid. Western's after-trial motions were overruled and it appealed.

■ When, as here, the trial court determines the cause without a jury we review the case upon both the law and the evidence (V.A.M.R. 73.01 [d]) and tax ourselves with the task of determining if the circuit court's judgment was correct upon any legal theory consistent with the pleadings. University Bank v. Mock, Mo.App., 411 S.W.2d 843(1); Service Construction Company v. Nichols Const. Co., Mo.App., 378 S.W.2d 283, 290(12).

Morris contends the hazard "Premises—Operations," admittedly insured by the policy, covers "the ownership, maintenance or *use of premises, and all operations*" by him in the business of "electrical wiring" regardless of the accident site or whether the accident occurred as he was performing services or following completion of his work. (Emphasis added.) In the alternative, he pleads the policy is ambiguous as regards Western's obligations and should be construed to extend the coverage he claims.

The policy is printed on legal cap paper to which has been attached three additional pages. The "Declarations" describe Morris' business as "Plumbing and Electrical Wiring" but leave blank the "Location of premises." Item 3 of the Declarations (omitting the last or "Property Damage Coverage B" column and other portions not presently germane) reads:

"Item 3. The insurance afforded is only with respect to such and so many of the following coverages and divisions of hazards as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage and division shall be as stated herein, subject to all the terms of this policy having reference thereto. The rating classifications under Description of Hazards do not modify the exclusions or other terms of this policy.

| Schedule of Coverages and Hazards | Premium Bases | Bodily Injury Coverage A | |
| --- | --- | --- | --- |
| | | Rate | Premium |
| Coverages A and B<br> Division 1. Premises—Operations<br>See Schedule Attached | Estimated Remuneration | | 29.52 |
| Division 2. Elevators (Location and Classification)<br>Not Covered | Number | | |
| Division 3. Independent Contractors<br>Not Covered | Cost | | |
| Division 4. Products—Completed Operations<br>Not Covered | Sales | Per $1,000 Sales | |

* * *."

The pertinent parts of the second or first inside page of the policy provide that Western "agrees with the insured * * * subject to the limits of liability, exclusions, conditions and other terms of this policy:

"Insuring Agreements

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the hazards hereinafter defined. Coverage B—Property Damage Liability * *

"Definition of Hazards

"Division 1—Premises—Operations. The ownership, maintenance or use of premises, and all operations.

"Division 2—Elevators · * * *

"Division 3—Independent Contractors * * *

"Division 4—Products—Completed Operations. (1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 3 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold; (2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled

by the named insured, provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 3 of the declarations specifically includes completed operations; (3) the word 'operations' as used in the paragraph above includes any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere, whether or not goods or products are involved in such operations.

* * * * * *

"Exclusions

"This policy does not apply:
* * * * * *
"(c) under division 1 of the Definition of Hazards, and under coverage c, to (1) the Independent Contractors Hazard or (2) the Products—Completed Operations Hazard; * * *"

The "Schedule Attached" referred to in division 1 of Item 3 of the declarations, is denominated as "Extension Schedule" and is the third item attached to the third page of the policy. Without reference, however, to any division, the "Schedule of Coverage" lists:

"Excavation * * *

"Plumbing * * *

"Sheet Metal Works * * *

"Electrical Wiring—within buildings including installation or repair of fixtures or appliances. Installation of electrical machinery or auxiliary apparatus to be separately rated."

In the last major portion of the policy under the heading of "Conditions," we find these additional statements:

"1. Premium * * * when used as a premium basis: * * * (4) the word 'sales' means the gross amount of money charged by the named insured * * * for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair * * *

\* \* \* \* \* \*

"6. Limits of Liability—Coverages A, B and D * * * Under divisions 1 and 3 of the Definition of Hazards * * * said limit applies separately to each project with respect to operations being performed away from premises owned by or rented to the named insured."

 As above noted, in the Declarations of the policy there is nothing to indicate "Location of Premises." We find nothing in the policy which defines "premises" as that word is used in the Declarations or in definition of hazards relating to "Premises—Operations."

The "Premises—Operations" and "Products—Completed Operations" hazards are separately defined and there is nothing in the policy to indicate a reciprocal relation between the two. While an exclusion does specify the "policy does not apply * * * under division 1 of the Definition of Hazards * * * to * * * the Products—Completed Operations Hazard," it does not necessarily follow the "completed operations away from premises" coverage is not also included in "Premises—Operations." The policy nowhere provides that all matters included in "Products—Completed Operations" are *excluded* from "Premises—Operations." Western urges that if the occurrence falls within "Products—Completed Operations" then, a fortiori, it is eliminated from coverage under "Premises—Operations." We do not agree an unbiased reading of the policy would convince a reasonable mind Western's conclusion is the only interpretation that can come from a perusal of the contract. Item 6 of Conditions, "Limits of Liability—Coverages A, B and D," provides that "Under divisions 1 and 3 of the Definition of Hazards and under coverage D, said limit applies separately to each project with respect *to operations being performed away from premises owned by or rented to the named insured.*" In the definition of "Products—Completed Operations" the policy relates that "operations" as used therein does not apply to "operations for which the classification stated in division 1 of Item 3 of the declarations specifically includes *completed operations.*" This indicates there are "completed operations * * * the underwriters want * * * to be covered by the Premises—Operation Hazard" (General Liability Insurance Handbook, 2nd Ed., by David Tyree Ratcliff,[1] Ch. 9 at p. 128) and Item 6 of Conditions, supra, recognizes "operations being performed away from premises owned by or rented to the named insured" as also falling within the coverage for "Premises—Operations." The word "premises," as we have stated, is not defined in the policy. The "Premises—Operations" hazard relates to "use of premises" without restricting it to premises "owned, rented or controlled by the named insured." The "Premises—Operations" hazard covers "all operations" without confining it to incomplete operations or operations performed at any particular place. Consequently we cannot accede to Western's claim that if the accident falls within the "Products—Completed Operations" hazard an exclusion to that hazard must be read into the "Premises—Operations" coverage in the policy. St. Paul Fire and Marine Insurance Company v. Coleman (D.C.W.D.Ark.) 204 F.Supp. 713, affirmed (8 C.C.A.) 316 F.2d 77, 80, 81(1, 2), cert. denied 375 U.S. 903, 84 S.Ct. 191, 11 L.Ed.2d 143. The most to be said for the construc-

I. Member of the Virginia Bar and Faculty Member, The School of Insurance, Insurance Society of New York, Inc.

tion Western invites is the policy is ambiguous and susceptible of also being understood in the manner urged by Morris. In such circumstances the policy will be construed against Western and in favor of the interpretation which will sustain Morris' claim. Clarkson v. M F A Mutual Insurance Company, Mo.App., 413 S.W.2d 10, 12(1); Irelan v. Standard Mutual Association of Cassville, Mo.App., 379 S.W.2d 815, 819(5); Hill v. Seaboard Fire & Marine Insurance Company, Mo.App., 374 S.W.2d 606, 611(8); Aetna Casualty and Surety Company v. Stover (8 C.C.A.) 327 F.2d 288, 290(1–3), 7 A.L.R.3d 655. When Western sought to restrict or lessen the effect of the general liability clause of the insurance policy because of an exception or exclusion, it assumed the burden of proving the exclusion to be unambiguously effective. Gennari v. Prudential Insurance Company of America, Mo., 335 S.W.2d 55, 61(4); Riverside Insurance Company of America v. McGlothin, 231 Ark. 764, 332 S.W.2d 486, 488(1). This burden, in our opinion, was not sustained and we are directed by the rule "of resolving all * * * ambiguities in favor of broad general coverage." Arnold v. Edelman, Mo., 392 S.W.2d 231, 236(1), and cases there cited.

The trial court and parties to this cause grant more than momentary genuflection to Rafiner Elevator Works, Inc. v. Michigan Mut. Liab. Co., Mo. (banc) 392 S.W.2d 240, Kissel v. Aetna Casualty & Surety Co., Mo.App., 380 S.W.2d 497, and the many authorities cited in those cases. A critique of those opinions here would only serve to prolong this writing and could in no way enhance what has there been so ably reasoned. Suffice it to say, the insureds in Rafiner and Kissel were covered with comprehensive general liability policies when their tort liabilities to third persons resulted from misperformance of services which had been completed at the time the injury occurred on premises not owned, rented or controlled by the named insureds. The "Products Hazard" or "Products (Including Completed Operations)" coverages

were excluded or "not covered" in the policies and defined similarly to clauses (1) and (2) of Division 4 in the instant case. Very broadly, Rafiner and Kissel (following what is called the majority view under recent decisions) hold that mingling a completed-off-the-premises-hazard definition or exclusion under the section of a policy having to do with products, results in an ambiguity if the generally covered insured does not sell or manufacture products as understood by popular definition, and that such ambiguity is to be resolved against the insurer and in favor of the insured.

To a degree, Western concedes that if a "completed off the premises operation" exclusion or definition be hidden beneath the title "products" or "products hazard" an ambiguity exists as no one other than an acutely perceptive insurance agent or underwriter steeped in insurance jargon would undertake to search that portion of the policy for the restrictions on coverage here contended. Western postulates, however, that if the hazard relating to "completed off the premises operation" appears under a heading of "Products—Completed Operation," the vagueness vanishes. We discern little difference between the titles employed and note the title of "Products (Including Completed Operations)" involved in the Kissel case did not serve to assuage the ambiguity acclaimed there. "It is our opinion that 'Products—Completed Operations' applied to a contractor [or one not principally engaged in selling or manufacturing products] is still ambiguous. Perhaps it is not as ambiguous as the word 'Products,' [or 'Products Hazard'] but nevertheless there is still ambiguity." Maretti v. Midland National Insurance Company, 42 Ill. App.2d 17, 190 N.E.2d 597, 601(3).

The contracts involved in Rafiner and Kissel, supra, were general liability insurance policies where "products—completed operations" coverage was initially included but withdrawn by endorsement. Western says the present case, which involves a manufacturers' and contractors' liability

policy, is different because "products—completed operations" coverage was never extended in the first place. This tenuous difference, if it is a difference, did not serve to alter the ambiguity found existing in St. Paul Fire and Marine Insurance Co. v. Coleman, supra, 204 F.Supp. 713 and 316 F.2d 77; Hoffman & Klemperer Co. v. Ocean Accident & Guar. Corp. (7 C.C.A.) 292 F.2d 324, or New Amsterdam Casualty Company v. Addison, Fla.App., 169 So.2d 877, each of which involved a manufacturers' and contractors' liability policy with Division 4 thereof entitled "Products—Completed Operations." Whether Division 4 of the policy is made inapplicable (as understood by insurer) by endorsement or because "not covered," does not detract from the resulting ambiguity or the coverage admittedly extended under "Premises—Operations" which insured against liability arising from "all operations" without restriction as to whether the work be completed or incompleted and without regard to whether the work is performed by the insured on or off his premises. Poynter v. Fidelity and Casualty Company of New York, La.App., 140 So.2d 42, 45(2). We must remember an insurance policy "is to be interpreted as the ordinary person in the shoes of the insured would understand it" (Peerless Insurance Company v. Clough, 105 N.H. 76, 193 A.2d 444, 446 [3]) and "the courts do not necessarily accept the construction accorded to policy terms by astute insurance specialists or perspicacious counsel but rather are concerned with the meaning which the ordinary insured of average intelligence and common understanding reasonably would give to the words or language under consideration." Hammontree v. Central Mutual Insurance Company, Mo.App., 385 S.W.2d 661, 666–667(4). Whether it be a general liability policy, a manufacturers' and contractors' policy or an owners, landlords and tenants policy (as in Maretti v. Midland National Insurance Company, supra, 42 Ill.App.2d 17, 190 N.E.2d 597), a "completed off the premises operation" definition or exclusion blended into a statement concerning products would be ambiguous and misleading to the average insured not a vendor or manufacturer of products.

Another distinction claimed by Western was made to the trial court and the learned circuit judge in an excellent memorandum opinion, which we adopt, said: "True it is that the subject policy's definition of 'Products Hazard' contains the words 'whether or not goods or products are involved in such operations,' which were not in the insurance policies on which Rafiner and Kissel were decided. However, Rafiner construed its policy as if it contained such words. The Court stated (392 S.W.2d, 1. c. 242): 'The definition in (2), supra, would appear to include any activity relating to labor or the rendition of services *even though no tangible goods are handled or produced.*' (Emphasis supplied). The court in effect held that provisions of the kind contained in the 'Definition of Hazards' on 'Products—Completed Operations,' (whether such does or does not contain the words quoted above) misleading and ambiguous because the average person would not expect an exclusion on 'products' to contain an exclusion of 'services' that have been completed."

Western finally presses us to observe a difference between the Rafiner and Kissel cases and the present one on the dubious basis the insureds in Rafiner and Kissel "did not manufacture, sell, handle or distribute a product" whereas "products used [by Morris] for his customers were obtained ready made, some in boxes and others in open bulk." The insured in Kissel was a contractor employed in building a school. In the Rafiner case the insured "was engaged in the business of manufacturing, repairing, and servicing elevators", although the tort it allegedly committed had to do with its services and not its products. There should be little doubt in anyone's mind but that a contractor undertaking to build a school, an elevator company engaged in repairing and servicing elevators, and an electrician performing "electrical wiring" will use some sort of a product in the performance of such services. The

wares used, however, are merely an incidental necessity to the work performed and are not commonly understood or contemplated as being "goods or products manufactured, sold, handled or distributed by the name insured." Edel's petition is not grounded on any defects in materials allegedly and incidentally used or applied by Morris in the performance of his services. Rather, Edel says Morris performed his services negligently. The differentiation sought by Western appears too technical to be comprehended by an average insured as constituting a nullification of coverage for "all operations" if he incidentally uses or provides some item not manufactured, sold, handled or distributed by him in the performance of services.

■ The ambiguity which appears in the policy by commingling "operations" with "goods or products manufactured, sold, handled or distributed by the named insured," is acutely compounded by the Declarations and paragraphs 1(4) of the Conditions. It will be noted in the Declarations the "Premium Bases," the "Rate" and "Premium" for "Bodily Injury Coverage A" as applied to "Products—Completed Operations" (Division 4), are predicated on "Sales" and "Per $1,000 Sales." The Conditions of the policy defines the word "sales" for premium purposes to mean "the gross amount of money charged by the named insured * * * for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair * * *" The words "Sales" and "Per $1,000 Sales" indicate "without serious room for doubt, the language [Products—Completed Operations] refers to sales of products, goods, wares or merchandise as by a manufacturer or producer as the premiums are scheduled on the amount of sales." King v. Mason, La.App., 95 So.2d 705, 718. A person whose insured vocation is "services" and not "sales" cannot be held to anticipate affinity between his undertakings and "Products—Completed Operations" when the premium for the latter is determined by "the gross amount of money * * * charged for all goods and products sold." Neither should he be expected to anticipate the definition of a hazard, the premium for which is calculated on gross sales, will contain an exclusion or limitation on coverage extended for "all [his service] operations."

■ Morris' simple aim in procuring the policy in question was to secure indemnity against liability on tort claims arising from his operations in the business of plumbing and electrical wiring. He unquestionably was afforded coverage for his "use of premises, and all operations." Any provision in the policy which could effectively serve to dilute or detract from the general coverage extended would have to do so without equivocation or ambiguity. We agree with the trial court this was not done and its judgment is accordingly affirmed.

STONE, P. J., and HOGAN, J., concur.