LEAKAKOS CONSTRUCTION COMPANY, INC., Plaintiff-Appellant, *v.* AMERICAN SURETY COMPANY OF NEW YORK, Defendant-Appellee.

(No. 55299;

First District—November 22, 1972.

*Rehearing denied December 26, 1972.*

Ash, Anos and Harris, of Chicago, (George J. Anos and Lawrence M. Freedman, of counsel,) for appellant.

Querrey, Harrow, Gulanick & Kennedy, of Chicago, (John T. Kennedy, of counsel,) for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff sued defendant insurance company for money damages incurred in disposition of a claim which it contends was covered under a public liability insurance contract. Defendant filed a motion to dismiss the complaint pursuant to Section 48 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1969, ch. 110, par. 48.) The trial court dismissed the complaint. Plaintiff then filed a motion to vacate the dismissal order and a motion requesting summary judgment in his favor on the issue of defendant's liability under the insurance contract. Both motions were denied, and plaintiff now appeals.

Defendant had issued a "Comprehensive General Liability Policy" to plaintiff as a "mason contractor" for the three year period of November 11, 1959 through November 11, 1962. Coverage included claims for property damage and bodily injury arising against plaintiff as a result of certain of its operations as a mason contractor. The policy also called for defendant to defend any suit against the insured involving bodily injury or property damage claims.

In March of 1961, plaintiff entered into a construction contract with the 6950 Ridge Corporation to erect all the brick walls and a brick chimney and incinerator system for a 32-unit apartment building on the premises at 6950 Ridge Avenue, Chicago, Illinois. Defendant issued a specific certificate of insurance under the Comprehensive General Liability Policy, covering the contractual agreements between plaintiff and the 6950 Ridge Building Corporation. This certificate was issued on April 20, 1961.

Plaintiff completed all of the masonry services for the 6950 Ridge Building during September of 1961. Subsequently a tenant of the new building, Audrey Ballard, filed suit against the management of the building and plaintiff alleging that she suffered injuries on September 2, 1962, from fumes and smoke leaking into her apartment as a result of faulty construction in the chimney and incinerator system. The chimney was adjacent to a wall of her apartment.

When plaintiff notified defendant of the claim of Audrey Ballard, defendant advised it that the Comprehensive General Liability Policy did not provide coverage for this occurrence. This disclaimer was based on the "products hazard" exclusion in the policy. Defendant maintained that the terms of the policy specified that the parties had agreed that the policy did not apply to "products hazard" as defined therein. The policy defines "products hazard" as:

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be "operations" within the meaning of this paragraph; (a) pick-up or delivery, except from or onto a

railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

Defendant contended that plaintiff purchased only ordinary operations coverage and that no premium was paid for products or completed operations protection. Its position was (and remains) that accidents occurring after completion of work constitute separate risks which must carry separate premiums.

Plaintiff eventually settled the claim of Audrey Ballard. Then, on June 20, 1969, plaintiff filed the instant suit, as an amended complaint for damages based on a breach of the insurance policy. Plaintiff's action is based on the contention that the "products hazard" exclusion is ambiguous as applied to contractors. It is argued that many jurisdictions have found similar "products" exclusions to be inapplicable to contractors because it has been held that contractors provide a service rather than sell or manufacture products. Plaintiff contends that the policy was purchased in contemplation of acquiring coverage for all of its operations as a contractor in Illinois. Plaintiff urges that defendant was under an obligation to defend against the personal injury claim of Audrey Ballard. We are asked to reverse the trial court's order dismissing plaintiff's complaint for the damages it sustained in defending and settling the claim.

OPINION

■■ The central issue raised by appellant is that a "products hazard" exclusion is ambiguous when applied to contractors and therefore should be construed against the insurer. This conclusion follows the general rule that ambiguous provisions of an insurance policy will be construed liberally in favor of the insured. (*Lenkutis v. New York Life Insurance Co.* (1940), 374 Ill. 136, 28 N.E.2d 86.) Therefore, it is necessary to examine both subsection (1) and (2) of the exclusion to determine if the mason contractor in the instant case falls within the rule. Initially, we note that where a contractor is engaged in activities that do not involve the manufacture or sale of a product, it has been held in Illinois that the provisions of a "products hazard" exclusionary clause are ambiguous as applied to the contractor. Further, it has been held that in such a case the policy should be construed to cover all accidents arising from the insured's work during the insurance contract period. *Maretti v. Midland National Insurance Co.* (1963), 42 Ill.App.2d 17, 28, 190 N.E.2d 597, 602.

Some cases interpreting the "products hazard" clause have placed contractors outside of the exclusion by holding that contractors deal in

services and not in products. (See *Hoffman & Klemperer Co. v. Ocean Accident & Guarantee Corp.* (1961), 292 F.2d 324.) Accordingly, the first question for our consideration concerns whether a mason contractor can be classified as a seller or manufacturer of products for purposes of the insurance policy, as opposed to a provider of services. That is, do a mason contractor's activities, as represented by the facts in this case, come within the language of subsection (1) of the "products hazard" exclusion. To fall within this language, the contractor's activities must include "goods or products manufactured, sold, handled or distributed by the named insured."

We have examined the numerous authorities presented by both appellant and appellee on this question of whether a contractor's activities include the manufacture or sale of goods or products. Appellant points to *Kendrick v. Mason* (1958), 99 So.2d 108, 324 La. 271, as the leading case interpreting the "products hazard" exclusion. In *Kendrick*, a sewer contractor was sued for fire loss caused by an explosion of gas which leaked from a pipeline severed by a contractor during construction of a sewer. In holding that the policy afforded coverage for the insured's liability, the court concluded that the contractor in question did not have products for sale. (*Kendrick v. Mason, supra,* 99 So.2d at 116, 234 La. at 294-295.) Two Illinois cases have adopted this standard. (See *Maretti v. Midland National Insurance Co.* (1963), 42 Ill.App.2d 17, 190 N.E.2d 597; *Hoffman & Klemperer Co. v. Ocean Accident & Guarantee Corp.* (1961), 292 F.2d 324.) The *Maretti* case involved an itinerant exhibitor of fireworks who left live explosives behind after a public show resulting in an injury to a young boy. The *Hoffman* case involved a suit against a tuckpointing contractor by an individual who was injured after the contractor's work on a building had been completed.

After considering the above authorities, as well as related cases, we are persuaded that it is not realistic to categorically hold that a contractor renders only services. The facts of each case should be closely examined to determine if a contractor has created by his physical labor or services a definable product or component. For example, a tuckpointing contractor as in the *Hoffman* case, *supra,* cannot be said to be engaged in the sale of work product because his trade is totally service oriented. On the other hand, several factors in the instant case lead us to the conclusion that appellant not only provided services but that its activities also involved a product which it sold to appellant. These special facts concern the construction and installation of the incinerator system that allegedly caused the injury to Audrey Ballard and resulted in the personal injury claim against appellant. The system was a specially constructed component in the wall and constituted a work product of the

insured which eventually caused an injury by reason of its internal defectiveness. Appellant sold the incinerator system just as he sold his services. The sale of this completed work product, together with appellant's services, was one and the same transaction. Accordingly, we find that the system constituted a product within the meaning of subsection (1) of the "products hazard" exclusion.

We turn next to subsection (2) of the "products hazard" clause which sets forth a completed operations exclusion. A reading of this subsection clearly indicates that the parties intend to limit the insurer's liability to accidents occurring during the process of the work and to exclude liability for accidents due to defective workmanship occurring after completion. Since the injury in this case occurred after appellant had completed the masonry work and the incinerator it constituted a separate risk and therefore, clearly falls within the exclusion.

In view of the above findings, we return to appellant's contention that the policy taken as a whole is ambiguous and should be construed to cover the accident in question. Where a policy is open to different interpretations or constructions the one most favorable to the insured should be adopted However, we cannot conclude that this standard permits the creation of an ambiguity where none exists. A fair reading of the declarations shows that the parties clearly intended to exclude something—*i.e.*, "products hazard" as defined therein. The language used in the exclusionary clause is clear and there is nothing ambiguous in the words or phrases. When the policy is viewed as a whole, it is clear that it excludes from liability any claim for damages arising from an internal defectiveness in the work product of the insured. Herein, the operation had been completed and liability occurred because of defective workmanship. This constitutes a separate risk which is ordinarily referred to as completed operations or products liability insurance. In the instant policy, the uninsured risk is set out, thus putting the insured on notice that a separate premium is required for completed operations coverage and for sales of products. This type of coverage is exclusive from general liability coverage, and a separate premium, which was not paid in this case, is generally required for such coverage. Therefore, we conclude that the policy in the case at bar does not cover a claim for damages arising from such a fact basis.

In view of the above determination we find no error in the court's denial of plaintiff's motion to vacate the judgment or its denial of plaintiff's motion for summary judgment.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.