UNIVERSITY BANK, Respondent,

v.

Richard F. MOCK, Appellant.

No. 24605.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1967.

William H. Costello, James H. Coonce, Kansas City, for appellant.

Bernard L. Balkin, Lloyd S. Hellman, Kansas City, Achtenberg, Sandler & Balkin, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

This was a court tried case. We review the action at law upon the law and the evidence as in suits in equity. Rule 73.01[d] V.A.M.R. On or about April 1,

1963, the defendant Richard F. Mock, made his check in the amount of $3,000 drawn on the Grand Avenue Bank of Kansas City, Missouri and payable to Sanders Motors. This check was either delivered to or came into the possession of Carl Sanders, d/b/a Sanders Motors. On this same date Mr. Sanders endorsed and delivered it for deposit to the University Bank of Kansas City, Missouri, plaintiff herein. On or near April 4, 1963, the University Bank, having placed its endorsement thereon, presented the check through the Kansas City Clearing House to the Grand Avenue Bank for payment. Payment was refused because Mr. Mock, maker and defendant, had issued a stop payment order, directing Grand Avenue Bank not to pay the check. Plaintiff thereafter demanded payment from defendant, which demand was refused. On April 4, 1964, plaintiff filed suit against defendant, alleging the above facts in substance, and in addition, that since April 1, 1963 it had been the owner of the check. Plaintiff prayed judgment for $3,000 and interest at 6 percent from April 4, 1963.

For his answer, the defendant Mock asserted that Carl Sanders "was never in lawful possession of or the lawful owner" of the check; that Sanders did not pay or give any consideration for the instrument; that plaintiff's sole claim to ownership is the ownership of Sanders; that plaintiff is not "a holder in due course" and "not an innocent owner, having paid no consideration for said check". Defendant called no witness to explain and in fact offered no affirmative evidence as to how Sanders obtained possession of the check or what consideration, if any, he gave for it.

Mr. Logan F. Wyrick, who in April, 1963, was president of the University Bank, was called as a witness by plaintiff. Mr. Wyrick said that on April 1, 1963, Sanders Motors made two deposits in the University Bank, the $3,000 check here in question, and one for $8,325. Photocopies made from the microfilm records of the bank were introduced, showing both deposits. The witness called attention to a difference on those two April first deposit slips. The one for $3,000, he said, "has an okay by our cashier Ed Donnell", "that shows that the funds are free to be paid on, that we had given immediate credit on the account for the $3,000, due to the fact that I knew Mr. Mock personally, knew him as a man of good reputation, and this check was verified from the Grand Avenue Bank that the check was good and a satisfactory account". He said the $8,325 deposit ticket had a "'hold' marked on this of $3,475 or five days" which meant "we were supposed to hold the funds, the $3,475 as uncollected for five days from April the 1st, 1963".

Some controversy developed as to the Sanders daily balance with the bank from April 1 to 4, 1963. The witness Wyrick contended that the daily balances shown on the ledger sheet were not "true balances" because same included some uncollected items, many of which were actually never collected. Mr. Wyrick testified that on April 2, 1963, the bank honored or paid out checks against the Sanders account, totaling $3,282.33. He said that after the $3,000 check had been returned and as of April 11, 1963, the Sanders account was overdrawn by $4,422.64, but they later collected about $700 thereon, and that the account at the time of the trial was overdrawn by $3,722.-64.

A judgment was entered on March 28, 1966, and recites findings that "the plaintiff gave immediate credit for defendant's check to the account of the depositor, and that the entire credit was exhausted by withdrawals of said credit and that pursuant to law, plaintiff became the owner of defendant's $3,000 check and that plaintiff is entitled to recover judgment against the defendant in the amount of $3,000, plus interest at 6% per annum from April 4, 1963 to the date of this judgment, in the sum of $532.50". Judgment accordingly in the sum of $3,532.50, with costs, was duly entered.

Defendant has appealed and lists three assignments of error. Number one asserts that under Section 402.030, V.A.M.S. any

credit given to a depositor is revocable except as to that part actually withdrawn, and therefore title to the $3,000 check did not immediately pass to plaintiff bank. Section 402.030, supra, after setting forth that unless there is an agreement otherwise, such depositor bank shall be "agent of the depositor for its collection", concludes "where any such bank allows any revocable credit for an item to be withdrawn such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn".

Considering the testimony of Mr. Wyrick and the bank exhibits (the only evidence presented) it seems reasonable to conclude that plaintiff bank gave immediate credit for the $3,000 check. Even if only "revocable credit", as described in Section 402.030, supra, was given, nevertheless it was fully exhausted on April 2, 1963, or two days before plaintiff learned that payment on the check had been stopped. In either event, plaintiff bank appears to have been possessed of "all the rights of an owner thereof", certainly to the extent of the withdrawals which exceeded the $3,000 credit.

The witness Wyrick testified that plaintiff bank on April 2, 1963, paid out six checks against the Sanders account, totaling $3,282.33 and that thereby the $3,000 credit was used up and Sanders was overdrawn. In this connection defendant says that two of those six checks were items of $840 and $900, which had been deposited prior to April 1, 1963, and therefore were not chargeable against the $3,000 check credit. Those two particular items had been received before April 1, and Sanders had been given revocable credit therefor. The two checks were uncollectible, or at least were not collected by plaintiff bank, and when they were returned on April 2, were, with other items, made good at least partially by charging same against the $3,000 Mock check credit. We believe such procedure was authorized.

In Citizens Fidelity Bank & Trust Co. v. Kilpatrick, Mo.App., 231 S.W.2d 301, 303, the defendant Kilpatrick had delivered his check for $452.50 to one Wooten, who deposited it in the plaintiff bank and was permitted to withdraw the entire amount. The check thereafter was returned unpaid because of insufficient funds. At that time Wooten's bank balance was $5.29. The appellate court reversed the trial court judgment for defendant and directed entry of judgment for plaintiff for the amount of the check, less a credit of $5.29, the amount of Wooten's balance. The court pointed out that under the common law and in the absence of an agreement to the contrary, the bank became owner of the check and not the agent of the depositor, for collection. The opinion then goes on to recite that the common law rule has been changed by statute and said that under Section 8174, RSMo 1939, (now Sec. 402.-030, supra), the bank became the agent of the depositor for collection, except—quoting the statute)—" * * * where any such bank allows any revocable credit for an item to be withdrawn such agency relation shall nevertheless continue except *the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn"*. (Italics added).

█ In the case before us it affirmatively appears that the Sanders account was overdrawn at all times from and after April 2, 1963. Therefore, plaintiff bank could recoup no part of the $3,000 credit from the Sanders account and no credit or setoff would therefore arise as in the Kilpatrick case. We deny this first assignment.

█ Secondly, defendant asserts that plaintiff failed to sustain the burden of proof and that the judgment is not supported by the evidence and is against the weight of the credible evidence. As heretofore summarized, the testimony of witness Wyrick and the exhibits (check and deposit slips) which constituted the only evidence before the court, tend strongly to show that

plaintiff extended immediate credit and this credit was entirely extinguished by April 4, when plaintiff learned for the first time that payment had been stopped. From such evidence, which was controverted only by suggestions posed on cross-examination, we must conclude that the trial court's findings were supported by substantial, credible evidence and we agree with such findings.

The third point asserts that plaintiff failed to produce evidence as to plaintiff's "true balance" on the dates in question and that such failure gives rise to a presumption that such evidence would be unfavorable, but contends the trial court ignored such presumption. The "true balance" on any given date would, we presume, be the difference between the depositor's duly established credits, including revocable credits, less not only paid debits, but items in transit for collection, including the revocable credit item itself, which later proved to be in fact uncollectible. This third point is without merit.

■ Appellant says plaintiff had the burden of proof and invites our attention to certain appellate opinions on this proposition. We agree that plaintiff had the burden of proof but have concluded that plaintiff carried this burden by substantial, credible evidence to the satisfaction of the trier of the facts, before the trial court and here.

We shall refer briefly to two cases cited by defendant under his Point Three.

In Whitmore v. American Railway Express Co. et al., 219 Mo.App. 294, 269 S.W. 654, 657, plaintiff sued for the wrongful death of her husband. After the alleged injury he had been treated by two doctors of his selection, but plaintiff called neither as a witness. Plaintiff objected to any inquiry as to the nature and purposes of such treatments on the ground "that the secrets of the sick room would be revealed" and her counsel admonished plaintiff while testifying to tell only what she, of her own knowledge, knew. The trial court sustained the objection. The appellate court ruled that the procedure followed was suppression of evidence, created an unfavorable inference or presumption and amounted to error.

State ex rel. St. Louis County Transit Co. v. Walsh, Mo.App., 327 S.W.2d 713, was a proceeding in prohibition to prevent the circuit judge from entering an order requiring production of photographs for inspection and copying. The photographs were taken by the motor bus operator at the accident scene. The writ was denied and it was held that spoliation or suppression of evidence gives rise to an unfavorable inference and destruction of written evidence without satisfactory explanation gives rise to an inference unfavorable to the spoliator.

The two cases just referred to are quite different from the one before us. In our case all evidence in existence was presented or was available. The testimony of no witness was restricted and a witness (Wyrick), who was fully conversant with all bank records, was not only called by plaintiff but was available for full and free cross-examination. Besides, plaintiff concedes that it charged items given revocable credit in March, on April 2d against the $3,000 credit. Plaintiff has furthermore given affirmative testimony and evidence that the whole $3,000 was used up on April 2d and Sanders was still overdrawn. In the face of this evidence it is difficult to see how a determination of the "true balance" would benefit defendant. Certainly the plaintiff bank records kept in the regular course of its business did not and could not on any particular day, reveal the "true balance". The only way it could now be compiled would be to take into consideration on any given date the outstanding items for collection which thereafter proved to be uncollectible and deduct same nunc pro tunc from the ledger balance on that given date.

The trial court found that plaintiff bank on April 1, 1963, gave immediate credit to the account of its depositor Sanders for defendant's $3,000 check and that the full

amount of such credit was exhausted by withdrawals. We agree and would add that this credit was fully exhausted on April 2, 1963, and prior to April 4, 1963, when plaintiff bank learned for the first time that payment on the check had been stopped by defendant, the maker. It is our opinion that these findings are supported by the evidence and are decisive. However, even if only revocable credit were given, it was exhausted on April 2, 1963, and under Section 402.030, supra, plaintiff bank had "all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn", which in this instance, would cover the whole $3,000 credit item. We believe the findings are for the right party.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

All concur.